EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| El Pueblo de Puerto Rico<br>    Recurrido<br><br>    v.<br><br>Ferdinand Martínez Lugo<br>    Peticionario | Certiorari<br><br>2000 TSPR 20 |
| --- | --- |

Número del Caso: CC-1999-0196

Fecha: 10/02/2000

Tribunal de Circuito de Apelaciones: Circuito Regional IV

Juez Ponente: Hon. Frank Rodríguez García

Abogados de la Parte Recurrente: Lcdo. Israel Roldán González

Abogados de la Parte Recurrida: Oficina del Procurador General
                                Lcda. Grisel Hernández Esteves
                                Procuradora General Auxiliar

Materia: Sustancias Controladas

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

En el Tribunal supremo de puerto rico

El Pueblo de Puerto Rico

    **Recurrido**

        **v.**                            CC-99-196     CERTIORARI

**Ferdinand Martínez Lugo**

    **Acusado-peticionario**

**Opinión del Tribunal emitida por el Juez Asociado SEÑOR REBOLLO LOPEZ**

**En San Juan, Puerto Rico, 10 febrero de 2000**

        **Luego de celebrado juicio por tribunal de derecho, Ferdinand Martínez Lugo fue hallado culpable, por infringir el Artículo 404 de la Ley de Sustancias Controladas y el Artículo 4 de la Ley de Armas, por el antiguo Tribunal Superior de Puerto Rico, Sala de Mayaguez.**

        **El <u>7 de marzo de 1988</u>, luego del informe socio-penal correspondiente, el tribunal de instancia entendió que Martínez Lugo, en cuanto al cargo de poseer sustancias controladas, cualificaba para el procedimiento esbozado en el Artículo 404(<u>b</u>) de la Ley de Sustancias Controladas. En virtud de dicha determinación, se suspendió todo procedimiento        --entiéndase la imposición de sentencia contra**

Martínez Lugo-- y éste fue sometidó a un período probatorio de dos años. Martínez Lugo tendría que cumplir con dos condiciones: someterse a un tratamiento ambulatorio en cierto programa de rehabilitación y poner al día los pagos de dos pensiones alimentarias[1].

El 17 de septiembre de 1990, habiendo expirado el término original de dos años impuestos por el tribunal, la Administración de Corrección envió una misiva al Fiscal de Distrito de Mayagüez en la cual informaba que el probando había sido evaluado, en febrero de 1988, por el programa D.S.C.A. y que éste no necesitaba tratamiento alguno pues las pruebas arrojaron un resultado negativo en cuanto al uso de drogas. Ello no obstante, en la misma carta se solicitó al fiscal que acudiera al tribunal en busca de una extensión de un año al período de libertad; ello debido a que, alegadamente, Martínez Lugo adeudaba novecientos dólares de pensión alimentaria, lo cual contravenía una de las condiciones de su libertad a prueba.

De acuerdo a las recomendaciones de Corrección, el fiscal presentó, el 26 de octubre de 1990, una moción mediante la cual solicitó que se extendiera el período por un año más en vista de que Martínez Lugo había incumplido con una de las condiciones impuestas. Esta solicitud, se

---

[1] En relación con la infracción por el Artículo 4 de la Ley de Armas, Martínez Lugo fue sentenciado a pagar una multa de cien dólares ($100).

presentó habiendo transcurrido <u>en exceso de siete meses</u> luego de concluido el término original de dos años impuesto por el tribunal.

Celebrada la vista para atender la solicitud del Ministerio Público, la defensa alegó que el período probatorio había vencido el 7 de marzo de 1990, por lo que tanto el informe del oficial probatorio como la solicitud del Ministerio Público, fueron presentadas fuera de término. El tribunal determinó, <u>el 22 de noviembre de 1990</u>, que: "[e]n cuanto a la extensión del período probatorio, radicada por el fiscal Velázquez el día 26 de octubre de 1990, el Tribunal la declara Sin Lugar. En cuanto a la exoneración del acusado, no hay nada que disponer por cuanto no está planteada."[2]

<u>En el mes de enero de 1991</u>, la representación legal de Martínez Lugo solicitó del tribunal que emitiese una orden para que se devolvieran las fotos y huellas tomadas al acusado. Al enterarse de dicha solicitud, el Ministerio Público solicitó reconsideración de la denegatoria del tribunal a extender el período por un año. Celebrada la vista, <u>el 29 de enero de 1991</u>, en la cual estuvo presente Martínez Lugo, el tribunal <u>reconsideró</u> su dictamen y ordenó la extensión del término por el plazo de un año.

---

[2] Minuta del 22 de noviembre de 1990, Apéndice V, pág. 19 del Legajo. En dicha minuta, además, se hizo constar que el fiscal <u>aceptó</u> que, a la luz de las fechas del informe y la solicitud de extensión, <u>no procedía la extensión</u>.

Nada se dispuso en cuanto a desde cuándo comenzaba a decursar ese "nuevo" año.

Durante el mes de abril de 1991, según alega el peticionario, éste consultó con su entonces representante legal en torno a la posibilidad de trasladarse a los Estados Unidos toda vez que tenía una oferta de empleo. Supuestamente, su abogado le indicó que podía hacerlo "porque ya había cumplido su probatoria". Por ello, Martínez Lugo se trasladó a vivir en los Estados Unidos, residiendo allí desde entonces.[3]

El 23 de septiembre de 1991, la Administración de Corrección cursó una misiva al Fiscal de Distrito alegando que Martínez Lugo había violado las condiciones impuestas para su libertad. El 4 de octubre de 1991, el fiscal solicitó del tribunal que se revocara la libertad a prueba concedida a Martínez Lugo; ello en virtud de las siguientes razones: no satisfacer una deuda por pensión alimentaria; ausentarse de la jurisdicción sin permiso; no comparecer ante el oficial probatorio; usar drogas narcóticas y no recibir tratamiento del D.S.C.A.

La vista sumaria inicial se pautó para el 12 de diciembre de 1991. Llegado el día de la vista, Martínez Lugo no se presentó y, por desconocer su paradero, el tribunal ordenó su arresto y fijó una fianza de diez mil dólares. Se reseñaló el asunto para el 17 de enero de

---

[3] Declaración jurada del peticionario, Apéndice IX pág. 24-25 del Legajo.

1992. Finalmente, el tribunal, <u>en la fecha antes mencionada</u>, revocó la libertad a prueba concedida a Martínez Lugo y ordenó su arresto. En virtud de lo anterior, el 5 de marzo de 1992, el tribunal <u>dictó sentencia</u> en contra de Martínez Lugo condenándolo a tres años de reclusión.

<u>Cinco años más tarde</u>, el 10 de junio de 1997, Martínez Lugo presentó una moción mediante la cual solicitó la corrección de la sentencia; ello por el fundamento de que las subsiguientes modificaciones a la sentencia fueron efectuadas luego de que "expirara" el término de dos años impuesto por el tribunal y que las actuaciones de éste fueron "ultra vires", pues violentaban el debido proceso de ley. Martínez Lugo acompañó su moción con una declaración jurada en la que expresaba que partió a los Estados Unidos luego de que su abogado le informara que había cumplido con la libertad a prueba; indicó, además, que desconocía que su sentencia había sido revocada.

Celebrada la vista correspondiente, el tribunal determinó que no entraría a entender en la solicitud de Martínez Lugo hasta tanto se acreditara que éste se había entregado a las autoridades o estaba detenido en una institución penal. Solicitada la reconsideración por la defensa, para que se consideraran los méritos de la solicitud, el tribunal de primera instancia emitió una resolución mediante la cual <u>denegó</u> la solicitud.

Martínez Lugo acudió, vía *certiorari*, ante el Tribunal de Circuito de Apelaciones. Luego de los tramites de rigor, el foro apelativo intermedio <u>denegó</u> la expedición del auto. Es de esa determinación que acude ante nos Martínez Lugo a través de un recurso de certiorari. Plantea que el tribunal de primera instancia no tenía jurisdicción para "modificar una sentencia posterior a que la misma fuera [sic] expirada y cumplida a cabalidad" y que dicho foro había errado al no entender en su solicitud de corrección de sentencia y al revocar su probatoria sin las garantías mínimas del debido proceso de ley.

El 23 de abril de 1999, concedimos término al Procurador General de Puerto Rico para que mostrara causa por la cual no debía revocarse la decisión del foro apelativo. En cumplimiento de dicha orden, el Procurador General ha comparecido. Estudiados los argumentos de las partes, nos encontramos en posición de resolver.


I

El vehículo procesal que utilizó la defensa para atacar la actuación del foro de instancia lo fue la Regla 185(a) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 185(a). Según interpretada recientemente, la referida disposición reglamentaria es el mecanismo adecuado para corregir y/o modificar la pena impuesta a una persona cuando: los términos de la sentencia rebasan los límites

fijados por el estatuto penal y/o se ha impuesto un castigo distinto al que había sido establecido. Es de notar que, a través de la Regla 185, no es posible variar o dejar sin efecto los fallos condenatorios. Pueblo v. Valdés Sánchez, res. el 29 de marzo de 1996, 140 D.P.R._ (1996). Es importante destacar que la citada Regla, cuando de sentencias ilegales se trata, no establece límite de tiempo para utilizarla; es decir, independientemente del plazo transcurrido, la parte perjudicada por una sentencia ilegal podrá solicitar su corrección en cualquier momento. Claro está, en los demás casos, por causa justificada y en bien de la justicia, la sentencia podrá reducirse dentro de los 90 días de haberse dictado. Cf. Pueblo v. Cubero Colón, 116 D.P.R. 682, 684 (1985); Pueblo v. Mojica Cruz, 115 D.P.R. 569 (1984). ¿Constituyeron las subsiguientes actuaciones del tribunal actos ilegales? Veamos.

## II

El Artículo 404(b) de la Ley de Sustancias Controladas, supra, provee un mecanismo para conceder un privilegio de libertad a prueba a ciertas personas. Sus beneficios están limitados a personas responsables de infringir dicho artículo que no hayan sido convictas anteriormente por delitos relacionados con sustancias controladas.[4]

---

[4] En lo pertinente, el estatuto dispone que "[s]erá ilegal el que cualquier persona, a sabiendas o intencionalmente,

A través del procedimiento establecido el tribunal puede, luego de la celebración del juicio o de una alegación de culpabilidad, someter a la persona a libertad a prueba con las condiciones y términos que estime apropiados. Aquí, el tribunal no hace pronunciamiento de convicción como tal y no dicta sentencia. El artículo en cuestión dispone expresamente que, en caso de incumplimiento con alguna de las condiciones, el tribunal revocará el beneficio de libertad a prueba y, entonces, procederá a dictar la sentencia que estime correspondiente. Artículo 404(b), supra.

La intención de la Asamblea Legislativa al diseñar el mecanismo del Inciso (b) del citado Artículo 404 es uno eminentemente rehabilitador. El tribunal goza de gran discreción para determinar la forma en que dicha rehabilitación se logrará, así como su duración. Claro está, la discreción está sujeta a un período máximo que no excederá de cinco años. Pueblo v. Román Santiago, 109 D.P.R. 485 (1980).

---

posea alguna sustancia controlada, a menos que tal sustancia haya sido obtenida directamente o de conformidad con la receta u orden de un profesional actuando dentro del marco de su práctica profesional, o excepto como se autorice en este Capítulo."

Ésta no es la única instancia en que la Asamblea Legislativa ha establecido este tipo de proceder. Véase, a manera de ejemplo, el Artículo 3.6 de la Ley de Violencia Doméstica, 8 L.P.R.A. § 636.

Este sistema, aunque análogo al provisto en el estatuto general de Sentencias Suspendidas[5], tiene sustanciales diferencias. Véase: Pueblo v. Texidor Seda, 128 D.P.R. 578 (1991). Una de las diferencias principales, entre la "probatoria" tradicional y la contemplada en la Ley de Sustancias Controladas, supra, es que, bajo esta última, no hay pronunciamiento de culpabilidad o convicción por un delito. Id. Esto es, no se dicta sentencia, todo el proceso queda suspendido hasta tanto otra cosa disponga el tribunal. En lugar de dictar sentencia, el tribunal fija un período durante el cual la persona se someterá a tratamiento y/o aquellas condiciones que el tribunal entienda apropiadas. De ocurrir algún incumplimiento por parte del beneficiario, se revoca la libertad a prueba y entonces se dicta la sentencia. Pueblo v. Texidor Seda, ante.

Por otro lado, luego de expirado el periodo fijado y habiendo cumplido la persona con las condiciones impuestas, el tribunal, luego de celebrar una vista, puede dar por terminado el periodo probatorio y exonerarlo si entiende que la persona está rehabilitada.[6] Por supuesto,

_____

[5] 34 L.P.R.A. sec. 1026 et. seq.

[6] Desde su concepción, este beneficio fue diseñado "[a] tono con el concepto prevaleciente de que el drogadicto es un enfermo, [por ello] la medida provee para la exoneración condicional por el primer delito de posesión de una sustancia controlada para consumo propio, bajo determinadas circunstancias." Informe conjunto del P. de la C. 1323, eventualmente convertido en la Ley Núm. 4 de 23 de junio de 1971 conocida como la Ley de Sustancias

la exoneración no es mandatoria por el mero hecho de que la persona haya cumplido con las condiciones; es un asunto que descansa en la sana discreción del tribunal. Pueblo v. Román Santiago, ante.

Cuando el tribunal de instancia actúa afirmativamente --ya sea para extender el periodo originalmente impuesto y/o para añadir unas condiciones, con el propósito de lograr la rehabilitación; o para dar por terminado el periodo probatorio impuesto y exonerar a la persona; o para dar por terminado dicho periodo y sentenciar a la persona-- no hay ninguna clase de problema. Ahora bien, la pregunta de umbral es ¿qué sucede u ocurre con la situación en que, habiendo transcurrido el plazo impuesto, la persona no solicita exoneración, ni el tribunal dicta sentencia de culpabilidad?[7]

En el pasado nos hemos enfrentado a situaciones, al amparo de la Sección 404(b) que, de cierto modo, nos sirven de faro rector para atender las interrogantes planteadas. Veamos.

En el citado caso de Román Santiago, ante, el tribunal de instancia estableció un término probatorio de

---

Controladas. "[E]l adicto no se cura con reclusión en presidio sino con tratamiento." Martínez Reyes v. Tribunal Superior, 104 D.P.R. 407, 409 (1975).

[7] Estas interrogantes surgen de la situación fáctica que debemos desmenuzar. En específico, el hecho de que Martínez Lugo cumplió con los dos años originalmente impuestos y, ante una solicitud de extensión por alegadas violaciones, el tribunal la denegó aunque no decretó el archivo del caso.

cuatro años. Mes y medio después que transcurrieran los cuatro años, a petición del oficial probatorio, el tribunal extendió un año al plazo probatorio. No hubo objeción de Román Santiago ni se instó recurso de revisión contra dicha determinación. Así las cosas, a petición del fiscal, el tribunal revocó la libertad a prueba concedida a Román Santiago porque éste había incurrido en una nueva infracción a la Ley de Sustancias Controladas. Aunque los hechos que justificaban la revocación ocurrieron dentro de la extensión decretada de un año, la solicitud del fiscal y la eventual revocación de la libertad a prueba ocurrieron luego de que transcurriera el año. Resolvimos en Román Santiago, ante, que, concluido el período probatorio, no es mandatoria la exoneración aun cuando el beneficiario haya cumplido al pie de la letra las condiciones impuestas[8]. Al rechazar la contención de Román Santiago de que el trámite para revocar el privilegio concedido debía iniciarse durante la vigencia del mismo, expresamos que existe una diferencia fundamental entre el mecanismo provisto en la ley general de sentencias suspendidas y el del Artículo 404(b) de la Ley de Sustancias Controladas. Finalmente, confirmamos la sentencia condenatoria y la revocación del privilegio

---

[8] Al así decidir, consignamos que Román Santiago había incumplido con su tratamiento rehabilitador incluso durante los cuatro años originales que se le impusieron evadiéndose de la institución donde recibía el tratamiento. Pueblo v. Román Santiago, ante, pág. 488-489.

concedido. Sin embargo, expresamos: "[n]o es menester considerar si sería procedente revocar la libertad a prueba al probando por hechos ocurridos luego de transcurrir cinco años desde que se le concedió tal beneficio. Tales hechos no están ante nuestra atención." Pueblo v. Román Santiago, ante, 489.

En Pueblo v. Texidor Seda, ante, el acusado hizo alegación de culpabilidad por infracción a la Sección 404 de la Ley de Sustancias Controladas. El tribunal suspendió los procedimientos y sometió a Texidor Seda al régimen de libertad a prueba por un término de tres años el cual luego fue reducido a dos años. Durante la vigencia de dicho término, Texidor Seda violó los términos de su libertad a prueba por lo que la misma fue revocada. Así pues, el tribunal lo sentenció a tres años de presidio. En revisión, Texidor Seda cuestionó el que se le "aumentara" la pena impuesta. Luego de reiterar que la ley general de sentencias suspendidas no es idéntica al procedimiento contemplado en la Ley de Sustancias Controladas --y establecer que éste es análogo al mecanismo de desvío de la Regla 247 de Procedimiento Criminal-- resolvimos que no se configuró la violación planteada por Texidor Seda. En efecto, determinamos que nunca se había impuesto pena alguna al acusado, simplemente tuvo la dicha de gozar de un privilegio que malogró.

En Pueblo v. Moreu Merced, 130 D.P.R. 702 (1992), nos enfrentamos a un programa de desvío contemplado en la

Regla 247.1 de Procedimiento Criminal, supra, que establece un <u>procedimiento igual</u> al provisto en el Artículo 404(b) de la Ley de Sustancias Controladas. Comenzado un proceso penal contra Moreu Merced por el delito de escalamiento agravado, el mismo fue suspendido para que éste se acogiera al proceso de desvío antes mencionado. La libertad a prueba concedida fue por un plazo de dos años. Conforme a las condiciones impuestas, Moreu Merced tenía que internarse en un programa de tratamiento contra la adicción a drogas. Antes de que venciera el término, Moreu Merced fue expulsado del programa. Sin embargo, este hecho no fue notificado al tribunal antes de que vencieran los dos años originalmente provistos. Enterado el tribunal, inició --<u>con celeridad</u>-- los procedimientos para revocar el beneficio y, como era de esperarse, así lo hizo. Vía certiorari, resolvimos que:

> "...el período probatorio que se le impone a una persona que se acoge a este procedimiento o mecanismo de desvío...<u>no termina automáticamente con el mero transcurso del período de tiempo</u>[sic] impuesto. Esto es, el tribunal <u>no</u> pierde jurisdicción sobre la persona que se acogió a dicho procedimiento <u>hasta tanto no se celebre la vista... [de exoneración] y hasta que el tribunal da por terminado el período probatorio</u>, exonerando al acusado y ordenando el <u>sobreseimiento</u> de la acusación radicada en su contra." (Énfasis en el original.)

Claro está, en <u>Moreu Merced</u>, ante, <u>sujetamos</u> la norma establecida a la <u>condición</u> de que el Ministerio Público <u>solicite</u>, y el tribunal <u>celebre</u>, la vista en un <u>término razonable</u> luego de finalizado el período probatorio

impuesto. Así pues, entendimos que el plazo transcurrido en dicho caso --ocho días-- fue razonable.

No hay duda de que, en esta clase de situaciones los tribunales de instancia deben intentar mitigar la incertidumbre del probando tomando los pasos afirmativos necesarios para dar por terminado, en una forma u otra, el caso. Concluido el término probatorio, el tribunal de instancia viene en la obligación de tomar una determinación con respecto al probando: exonerarlo si está rehabilitado y cerrar el caso; ampliar el plazo de libertad a prueba; o dar por terminado el mismo y sentenciar al acusado si éste no ha cumplido con las condiciones impuestas.

En otras palabras, no debe suceder lo que ocurrió en el presente caso, esto es, que no obstante haber finalizado el periodo probatorio originalmente impuesto, el tribunal permitió, con su inacción, que el caso permaneciera en un limbo jurídico.

Además, es importantísimo que los tribunales, al someter a una persona a estos tipos de programas, adviertan al beneficiario que retienen jurisdicción sobre su persona aun cuando haya concluido el plazo original y hasta tanto no se tome una de las determinaciones arriba mencionadas; principios del debido proceso de ley así lo requieren.

### III

Examinemos el caso de autos. Los dos años originalmente impuestos a Martínez Lugo comenzaron a decursar el 7 de marzo de 1988 y, por ende, vencieron el 7 de marzo de 1990. No está en disputa el hecho de que el tribunal retenía jurisdicción sobre éste aun después de concluido el plazo. El asunto es otro: la diligencia con que actuó el Ministerio Público y el tribunal de instancia. En el presente caso, habiendo transcurrido seis meses de expirado el término, fue que la Administración de Corrección envió una carta al fiscal en solicitud de que se extendiera el plazo. Luego de que la misiva descansara por un mes más en la oficina del Fiscal de Distrito, fue que éste solicitó del tribunal la extensión aludida.

Celebrada la vista, unos siete meses luego de expirado el período, el fiscal de turno expresó en sala que no procedía su propia solicitud por haberse presentado la misma fuera de término. Por ello, el tribunal, contando con la presencia de Martínez Lugo en sala, rechazó la extensión solicitada. No hay duda de que el tribunal de instancia, en ese momento, debió dar el caso por cerrado y exonerar al probando. No lo hizo.

Finalmente, diez meses luego de vencido el plazo original, es que el Ministerio Público, luego de que Martínez Lugo solicitara la devolución de sus fotos y huellas, solicita una tardía "reconsideración" de la antes mencionada denegatoria. Por deducción lógica, la cuestión

se reduce a determinar la razonabilidad de los diez meses de demora en que se incurrió en el presente caso.

Somos del criterio que --contrario al caso de Pueblo v. Moreu Merced, ante, en el cual tanto el ministerio fiscal como el tribunal de instancia actuaron con una admirable rapidez-- en el presente caso hubo desidia, y hasta negligencia, de la Rama Ejecutiva de nuestro Gobierno. Esto es, a nuestro juicio resulta impermisible que en esta clase de situaciones se permita al ministerio público solicitar del tribunal que se extienda el periodo probatorio cuando han transcurrido en exceso de diez (10) meses desde que venció el periodo original fijado.

Lo expresado tiene la consecuencia jurídica de exonerar al aquí peticionario; ello así ya que la extensión del término era improcedente --por razón de incuria-- razón por la cual procede decretar el cierre del caso y la exoneración del peticionario.

Se dictará Sentencia de conformidad.


                        FRANCISCO REBOLLO LOPEZ
                              Juez Asociado

En el Tribunal supremo de puerto rico


El Pueblo de Puerto Rico

   **Recurrido**

    **v.**                  **CC-99-196**     **CERTIORARI**

**Ferdinand Martínez Lugo**

   **Acusado-peticionario**



**SENTENCIA**


**En San Juan, Puerto Rico, 10 febrero de 2000**


    **Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia revocatoria de la emitida por el Tribunal de Circuito de Apelaciones, ordenándose el cierre del caso y la exoneración del peticionario Ferdinand Martínez Lugo; devolviéndose el caso al tribunal de instancia para procedimientos ulteriores consistentes con lo aquí resuelto.**

    **Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.**



                        **Isabel Llompart Zeno**
                    **Secretaria del Tribunal Supremo**