EL PUEBLO DE PUERTO RICO, recurrido, *v.* EDUARDO R. RAMOS MUÑOZ, peticionario.

Número: CC-2002-685      *Resuelto:* 14 de noviembre de 2003

*José A. Rubio Pitre*, abogado de la parte peticionaria; *Roberto*

*J. Sánchez Ramos*, procurador general, abogado de la parte recurrida.

## SENTENCIA

Tenemos la ocasión para volver a examinar el sentido y alcance de lo dispuesto en el inciso (a) de la Regla 185 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, en lo relativo a la corrección de una sentencia supuestamente ilegal.

## I

El peticionario Eduardo Ramos Muñoz fue convicto por cometer los delitos de homicidio, agresión agravada menos grave y violación al Art. 8 de la Ley de Armas de Puerto Rico (Ley de Armas). El Tribunal de Primera Instancia lo condenó *el 15 de noviembre de 1995* a cumplir en forma concurrente seis años de reclusión por el delito de homicidio y seis meses por la agresión agravada; también lo condenó a tres años de reclusión por la violación a la Ley de Armas, a cumplirse en forma consecutiva con las otras penas, para un total de nueve años de reclusión. *Se le negó el beneficio de una sentencia suspendida.*

Ramos Muñoz apeló su sentencia, y el 27 de agosto de 1997 el Tribunal de Circuito de Apelaciones resolvió que el peticionario tenía derecho a una sentencia suspendida en cuanto a los delitos que no estaban excluidos de tal beneficio. Esto dio lugar a que el *15 de septiembre de 1997* el Tribunal de Primera Instancia, Sala Superior de Arecibo, enmendara la sentencia original para disponer que los seis años de reclusión por los delitos de homicidio y agresión agravada se cumplieran al amparo del régimen de sentencia suspendida. Ese mismo día Ramos Muñoz fue *excarcelado*, pues había cumplido en prisión más de lo que correspondía a la pena impuesta por la violación a la Ley de Armas.

Debe señalarse que el dictamen del foro apelativo de 27 de agosto de 1997, referido antes, lo impugnaron ante nos

oportunamente, pero *denegamos* expedir el recurso impugnatorio mediante la Resolución de 5 de diciembre de 1997.

El asunto que nos concierne aquí se relaciona con el hecho de que Ramos Muñoz completó estudios en Derecho en 1995, por lo que *en septiembre de 1999* tomó el examen de reválida para el ejercicio de la abogacía y lo aprobó. Sin embargo, Ramos Muñoz no pudo jurar como abogado debido a que la Comisión de Reputación de Aspirantes al Ejercicio de la Abogacía, avalada por este Tribunal, determinó que no se podía certificar el buen carácter y la reputación del aspirante porque no extinguió todas las penas que se le impusieron, referidas antes.

Así las cosas, Ramos Muñoz acudió ante el foro de instancia y solicitó la *reconsideración* de la sentencia del 15 de noviembre de 1995, a los fines de que la parte de esa sentencia que se le impuso por el homicidio se cumpliera de modo *concurrente* con las penas impuestas por los demás delitos. El 20 de enero de 2002, el foro de instancia dictó una sentencia enmendada y acogió lo solicitado por Ramos Muñoz.

El Ministerio Público recurrió, entonces, ante el foro apelativo para impugnar la sentencia enmendada referida en el párrafo anterior. *Adujo allí que el tribunal de instancia carecía de jurisdicción para reconsiderar la sentencia original porque la solicitud de reconsideración fue presentada fuera de los términos fijados en la Regla 185 de Procedimiento Criminal*, 34 L.P.R.A. Ap. II.

El foro apelativo expidió el auto que solicitó el Ministerio Público, y el 22 de agosto de 2002 dictó la sentencia que el peticionario impugna ante nos aquí. Ese tribunal rechazó el planteamiento jurisdiccional que presentó el Ministerio Público al resolver que los términos provistos por la citada Regla 185 de Procedimiento Criminal no le aplicaban al caso de autos. No obstante, el foro apelativo procedió motu proprio a *revocar* la sentencia impugnada por entender que no se podía ordenar que las penas pendientes se cumplieran concurrentemente con la pena ya cumplida, porque ésta ya estaba extinguida. Más aún, el foro apela-

tivo también se expresó motu proprio con respecto a la sentencia del foro de instancia de 15 de septiembre de 1997, *la que se emitió siguiendo un mandato del propio foro apelativo y no la impugnó el Ministerio Público en ningún momento.* Decretó que esa sentencia era ilegal y, por ende, nula por entender ahora el foro apelativo que el beneficio de sentencia suspendida no se puede conceder de ningún modo a alguien que ha sido convicto por utilizar un arma de fuego al cometer un delito grave. El foro apelativo, pues, le dio marcha atrás a un dictamen previo suyo que nunca se refutó y, además, anuló una sentencia del foro de instancia que nadie impugnó. En vista de todo esto, ese foro, por voto de 2–1, reinstaló la Sentencia de 15 de noviembre de 1995 y revocó, no sólo la sentencia del foro de instancia *de 20 de enero de 2002*, sino también la que emitió el *15 de septiembre de 1997.*

Inconforme con este dictamen, Ramos Muñoz acudió ante nos por medio de un recurso de *certiorari.* El 25 de octubre de 2002 expedimos ese recurso a fin de revisar la sentencia que emitió el foro apelativo el 22 de agosto de 2002. El 14 de febrero de 2003 accedimos a la solicitud del peticionario de que se acogiese su petición de *certiorari* como su alegato. El 20 de marzo de 2003 el Procurador General presentó el alegato de El Pueblo. Pasamos a resolver.

## II

En lo medular en el caso de autos, nos corresponde decidir si el Tribunal de Circuito de Apelaciones tenía autoridad para "corregir" inicialmente una sentencia del foro de instancia que era supuestamente errónea, a pesar de que *desde hacía mucho tiempo* esa sentencia había advenido final y firme, *a pesar de que nadie le solicitó que la "corrigiese"* y a pesar de que la sentencia en cuestión se emitió precisamente por un mandato previo del propio Tribunal de Circuito de Apelaciones, *que nosotros declinamos revisar.*

La "corrección" de la sentencia en cuestión, además, apa-

reja la grave consecuencia de que un convicto que ya había cumplido con la pena resultante de la sentencia de instancia "corregida", tenga que encarar la terrible realidad de regresar al presidio, a pesar de haber *transcurrido ya seis años desde que el convicto cumplió la referida pena carcelaria.*

El foro apelativo fundamentó el inaudito dictamen que ha sido impugnado ante nos, en lo dispuesto en la referida Regla 185(a) de Procedimiento Criminal que, en lo pertinente, dispone que "[e]l *tribunal sentenciador* podrá corregir una sentencia ilegal en cualquier momento".

Es evidente que el decreto del foro apelativo en cuestión es erróneo. Conforme a lo que ya habíamos resuelto, le compete al foro de instancia corregir inicialmente una sentencia penal supuestamente ilegal, a petición del Ministerio Público. No puede hacerlo el Tribunal de Circuito de Apelaciones como lo hizo en el caso de autos.

En efecto, en *Pueblo v. Bigio Pastrana*, 116 D.P.R. 748 (1985), el Procurador General de Puerto Rico nos planteó en su informe que la sentencia que le impuso el tribunal de instancia al convicto en ese caso era menor que la pena mínima dispuesta por el Código Penal para el delito en cuestión. Nos pidió el Estado, pues, que aumentáramos la pena impuesta al convicto, al amparo de lo dispuesto precisamente en la referida Regla 185(a) de Procedimiento Criminal. *Respondimos al planteamiento del Procurador General en la negativa.* Declinamos ejercer nuestra jurisdicción para intervenir en ese planteamiento y señalamos que le tocaba al *foro de instancia* dilucidar el asunto, *a instancias del Procurador General.* Expresamente resolvimos que la corrección de una sentencia ilegal, según dispuesto en la citada Regla 185(a), le correspondía específicamente al *"tribunal sentenciador". Pueblo v. Bigio Pastrana*, supra, pág. 762. Por ende, no le compete al Tribunal de Circuito de Apelaciones hacerlo como lo hizo aquí.

Como claramente indicamos en *Pueblo v. Bigio Pastrana*, supra, le corresponde al Procurador General llevar un planteamiento sobre sentencia ilegal al foro de instancia que la dictó. Le compete a ese foro, entonces, dilucidar inicial-

mente si en efecto dictó una sentencia ilegal. Nada de esto ha sucedido en el caso de autos, que presenta, además, la cuestión de si el debido proceso de ley permite que ahora, *más de seis años después de haber cumplido la sentencia supuestamente ilegal*, puede el convicto ser reencarcelado para cumplir así el remanente de la pena pendiente.

## III

Por los fundamentos expuestos, *se revoca el dictamen del foro apelativo de 22 de agosto de 2002.*(1)

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado Señor Corrada Del Río emitió una opinión disidente, a la cual se unió el Juez Presidente Interino Señor Rebollo López. El Juez Asociado Señor Rivera Pérez no intervino.

(*Fdo.*) Patricia Otón Olivieri
*Secretaria del Tribunal Supremo*

— O —

Opinión disidente emitida por el Juez Asociado Señor Corrada Del Río, a la cual se une el Juez Presidente interino Señor Rebollo López.

Mediante la Sentencia que hoy se certifica, una mayoría de este Tribunal resuelve otorgarle eficacia jurídica a una sentencia emitida contrario a lo permitido por la Ley de Sentencia Suspendida y Libertad a Prueba, 34 L.P.R.A. sec. 1026 *et seq.*

Por entender que una sentencia así dictada es radicalmente nula, y en vista de que el ordenamiento procesal

---

(1) La parte de ese dictamen relativa a la revocación de la sentencia del foro de instancia de 20 de enero de 2002 se ha tornado *académica*, en vista de que Ramos Muñoz terminó de cumplir *con todas las penas* al amparo del régimen de sentencia suspendida el *17 de septiembre de 2003*. Por eso, *no procede que consideremos* esa parte del dictamen del foro apelativo impugnado aquí.

penal vigente le otorga jurisdicción a los tribunales para corregir una sentencia ilegal en cualquier momento, confirmaríamos la Sentencia del honorable Tribunal de Circuito de Apelaciones.

## I

Allá para el 6 de octubre de 1995, el Sr. Eduardo Ramos Muñoz (Sr. Ramos Muñoz o el peticionario) fue declarado culpable por los delitos de homicidio y agresión agravada menos grave, y de violación al Art. 8 de la Ley de Armas de Puerto Rico (en adelante Ley de Armas), 25 L.P.R.A. sec. 418.[1] Conforme con este veredicto, el Tribunal de Primera Instancia (en adelante TPI) dictó sentencia el 15 de noviembre de 1995, mediante la que condenó al peticionario a cumplir seis años de reclusión por el delito de homicidio; tres años por violación al Art. 8 de la Ley de Armas, *supra*, a ser cumplidos de forma consecutiva con la pena del delito de homicidio, y seis meses por el delito de agresión agravada, concurrentes con las penas anteriores. El TPI indicó que de no impedírselo la Ley de Sentencia Suspendida y Libertad a Prueba (en adelante Ley de Sentencia Suspendida), hubiera concedido la probatoria para los delitos de homicidio y agresión agravada menos grave. Sin embargo, ese foro interpretó que cuando una persona es convicta por un delito excluido del beneficio de sentencia suspendida, el tribunal carece de facultad para conceder el beneficio con respecto a los otros delitos, aunque éstos no estén taxativamente excluidos. Cabe mencionar que para la fecha en que ocurrieron los hechos en cuestión, el peticionario era estudiante de Derecho, habiendo adquirido su grado al momento de dictarse la referida sentencia.

Así las cosas, el peticionario apeló ese dictamen ante el Tribunal de Circuito de Apelaciones (en adelante TCA) y

---

[1] Los hechos por los que fue hallado culpable ocurrieron el 6 de enero de 1995. De esos eventos resultó muerto el Sr. Edmundo Ramos Rosario, sobrino del peticionario. El Sr. Edmundo Ramos Román, hermano del peticionario y padre del occiso, fue herido de bala. Véase Apéndice, pág. 35.

alegó que erró el TPI por cuanto no le concedió el beneficio de sentencia suspendida por los delitos de homicidio y agresión agravada menos grave. El TCA consideró el recurso y, el 27 de agosto de 1997, emitió una sentencia mediante la cual resolvió que como el TPI encontró culpable al peticionario, le aplicaba el beneficio de sentencia suspendida en *todos los delitos imputados* —con excepción del cargo por el citado Art. 8 de la Ley de Armas— procedía que este foro dispusiera a tal efecto una vez recibiera el mandato. De este dictamen, el peticionario acudió ante este Tribunal mediante un recurso de apelación para *solicitar la revisión de otros aspectos de la decisión del TCA.*(²) El recurso fue atendido como un *certiorari*, y se denegó mediante Resolución de 5 de diciembre de 1997.

En el ínterin, el 17 de septiembre de 1997, a tenor con la referida sentencia del TCA, el TPI enmendó las sentencias de homicidio y agresión agravada menos grave para que se cumplieran bajo el régimen de sentencia suspendida. Ese mismo día excarcelaron al peticionario, ya que había cumplido más del tiempo correspondiente a la sentencia por infracción al citado Art. 8 de la Ley de Armas (tres años).

Dos años después de que se emitiera la referida sentencia enmendada, el peticionario solicitó el examen de reválida de abogado y, tras aprobarlo, se inició el proceso correspondiente para considerar su admisión al ejercicio de la profesión. Conforme al trámite usual, la Comisión de Reputación de Aspirantes al Ejercicio de la Abogacía comenzó su investigación sobre el carácter y aptitud moral del peticionario. No obstante, luego de evaluar el expediente del Sr. Ramos Muñoz, la Comisión entendió que no estaba en condiciones para certificar su buena reputación, ya que éste no había agotado la pena a la que fue sentenciado. Aún así, la Comisión procedió a elevar el asunto ante nos, por entender que se trataba de una cuestión de estricto derecho.

---

(²) Específicamente, el peticionario alegó que el Jurado incurrió en error manifiesto en la determinación de culpabilidad y apreciación de la prueba, y que se le violó el derecho al debido proceso de ley al no ofrecérsele un juicio justo e imparcial.

Tras evaluar el caso, emitimos una resolución en la cual denegamos la solicitud de admisión del peticionario. Sin embargo, en vista de la importancia del asunto, acogimos una segunda moción de reconsideración y emitimos una opinión *per curiam* en la cual concluimos que la Comisión no podía certificar el buen carácter y la reputación del aspirante hasta que éste no extinguiera su pena. Véase *In re Ramos Muñoz*, 155 D.P.R. 255 (2001).

En vista de esto, el 9 de abril de 2001 el peticionario acudió ante el TPI y solicitó la reconsideración de la sentencia que dictó ese foro el 17 de septiembre de 1997, *a los fines de que la pena de tres años impuesta por violar el citado Art. 8 de la Ley de Armas se considerara cumplida concurrentemente con la pena de seis años impuesta por el delito de homicidio.* A la fecha de la solicitud, el peticionario ya había extinguido en prisión la pena de tres años por la Ley de Armas, y había cumplido cuatro de los seis años por el delito de homicidio. El Ministerio Público se opuso a tal petición y planteó que el tribunal carecía de jurisdicción para modificar la referida sentencia.

Atendidos los argumentos de las partes, el 29 de enero de 2002 el TPI emitió una sentencia enmendada en la que determinó que, según lo resuelto en *Pueblo v. Tribunal Superior*, 104 D.P.R. 650 (1976), tenía facultad para revisar en cualquier momento una sentencia dictada en probatoria. Así, pues, resolvió que el caso de autos era adecuado para reconsiderar, concediéndole lo solicitado al peticionario.[3]

Inconforme, el Procurador General acudió ante el TCA para plantear que el TPI carecía de jurisdicción para reducir la sentencia en cuestión, toda vez que habían vencido los términos dispuestos para ello en la Regla 185(a) de Procedimiento Criminal, 34 L.P.R.A. Ap. II. Además, adujo que lo resuelto en *Pueblo v. Tribunal Superior*, supra, era inaplicable a las circunstancias del presente caso, dado que lo resuelto en aquella ocasión se limitaba a casos bajo el

---

[3] Véase Apéndice, pág. 29.

palio de la Ley de Sustancias Controladas de Puerto Rico, 24 L.P.R.A. sec. 2101 *et seq.*[4]

Luego de evaluar los méritos del caso, el TCA revocó la sentencia recurrida.[5] Sin embargo, en lugar de resolver los asuntos planteados, el TCA, motu proprio, revocó a base de que la Sentencia de 17 de septiembre de 1997 —la cual concedió al peticionario el beneficio de la sentencia suspendida— constituía una sentencia ilegal. A tenor con esto, revocó la referida Sentencia de 17 de septiembre de 1997 y dejó en pleno vigor las sentencias originalmente dictadas el 15 de noviembre de 1995.[6] El TCA fundamentó su proceder en la Regla 185(a) de Procedimiento Criminal, *supra*, que le permite a un tribunal corregir una sentencia ilegal en cualquier momento, y en el Art. 2 de la Ley de Sentencia Suspendida, 34 L.P.R.A. sec. 1027, que establece que una persona que ha utilizado un arma de fuego durante la comisión de un delito grave, o su tentativa, está excluida de sus beneficios. Como consecuencia de este dictamen, el peticionario perdió el privilegio de cumplir el remanente de su pena bajo el régimen de sentencia suspendida.

Así las cosas, el 19 de septiembre de 2002 el peticionario presentó ante nos un recurso de *certiorari* y una Moción en Auxilio de Jurisdicción, en la que nos solicitó que emitiésemos una orden que paralizara la ejecución del mandato del TCA, ya que eso implicaría el arresto y la encarcelación del peticionario.

Las controversias planteadas en el recurso del peticiona-

---

[4] Íd., pág. 38.

[5] Véase Sentencia de 22 de agosto de 2002. La sentencia la emitió el panel integrado por los jueces Soler Aquino, Colón Birriel y Escribano Medina; el primero de ellos emitió un voto disidente.

[6] Este panel también resolvió, para fines argumentativos, que de acuerdo con *Pueblo v. Tribunal Superior*, 104 D.P.R. 650 (1976), los tribunales tienen jurisdicción para modificar una sentencia que se cumple de manera suspendida, aunque el caso en cuestión no esté bajo el palio de la Ley de Sustancias Controladas de Puerto Rico. Sin embargo, condicionó su jurisdicción a que las penas a revisar no se hayan extinguido. Debido a que el peticionario ya había extinguido su pena por la violar el Art. 8 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. sec. 418, el Tribunal de Circuito de Apelaciones (en adelante TCA) entendió que no procedía la modificación de la sentencia en este caso. Véase Apéndice, pág. 14.

rio se reducen a dos, a saber: (1) si el TCA tenía facultad para revocar la sentencia que dictó el TPI el 17 de septiembre de 1997, que le concedió al peticionario los beneficios de una sentencia suspendida, y (2) si erró el TCA al decidir que el TPI no tenía jurisdicción para enmendar las sentencias dictadas originalmente, para que las penas impuestas concurrentemente por los delitos de homicidio y agresión agravada se cumplieran concurrentemente también con la pena ya extinguida por infracción al Art. 8 de la Ley de Armas, *supra.*

El 20 de septiembre de 2002 emitimos una resolución que paralizó los procedimientos ante el TPI hasta que otra cosa se dispusiera. Posteriormente, el 25 de octubre de 2002, expedimos el auto de *certiorari* solicitado.

Por las razones que se exponen a continuación, confirmaríamos el dictamen recurrido. Veamos.

## II

Sabido es que en nuestro ordenamiento procesal la sentencia es el pronunciamiento judicial de la pena que se le impone al acusado tras un fallo o veredicto de culpabilidad. *Pueblo v. Martínez Lugo*, 150 D.P.R. 238 (2000); *Pueblo v. Tribunal Superior*, 94 D.P.R. 220, 223 (1967). Del mismo modo, nuestro ordenamiento provee para que una vez se dicta una sentencia para un caso específico, el tribunal modifique su dictamen si se verifican ciertas condiciones. A esos efectos, la Regla 185(a) de Procedimiento Criminal, *supra*,([7]) dispone:

> [e]*l tribunal sentenciador podrá corregir una sentencia ilegal en cualquier momento.* Asimismo podrá, por causa justificada y en bien de la justicia, rebajar una sentencia dentro de los noventa (90) días de haber sido dictada, siempre que la misma no estuviere pendiente en apelación, o dentro de los sesenta (60) días después de haberse recibido el mandato confirmando la sentencia o desestimando la apelación o de ha-

---

([7]) Esta regla proviene de la Regla 35 de Procedimiento Criminal federal, 18 U.S.C.A.

berse recibido una orden denegando una solicitud de *certiorari*. (Énfasis suplido.)([8])

Como se puede observar, la citada regla distingue la jurisdicción correctiva del tribunal sentenciador para dos supuestos diferentes. Mientras que la primera oración del estatuto dispone para la corrección de una sentencia ilegal, la segunda provee el mecanismo y los términos para que ese foro rebaje una sentencia dictada conforme a derecho.

En cuanto al primer supuesto, hemos resuelto que una sentencia ilegal es aquella que un tribunal dicta sin jurisdicción o autoridad, *en abierta contravención al derecho vigente*.([9]) *Pueblo v. Pérez Rivera*, 129 D.P.R. 306, 322 (1991); *Pueblo v. Lozano Díaz*, 88 D.P.R. 834, 838 (1963); E.L. Chiesa Aponte, *Derecho procesal penal de Puerto Rico y Estados Unidos*, Bogotá, Ed. Forum, 1993, Vol. III, pág. 562. En consecuencia, una sentencia dictada así es nula e inexistente, ya que los estatutos de penalidad son jurisdiccionales, " '[por lo que] limitan el propio poder de la Corte' ". *Pueblo v. Lozano Díaz*, supra, pág. 840. Dado que una actuación judicial inválida no debe conllevar consecuencias legales, la citada regla permite al tribunal, en cualquier momento, corregir una sentencia que adolezca de ilegalidad. *Pueblo v. Martínez Lugo*, supra; *Pueblo v. Casanova Cruz*, 117 D.P.R. 784 (1986). *Tal corrección la puede promover el tribunal sua sponte, incluso a nivel apelativo, e indistintamente de si el convicto ya empezó a extinguirla. Pueblo v. Pérez Rivera*, supra, págs. 322–323; *Pueblo v. Castro Muñiz*, 118 D.P.R. 625, 653 (1987); *Pueblo v. Lozano Díaz*, supra, pág. 841.([10]) *Más aún, la facul-*

---

([8]) Nótese que la regla provee para la corrección de la *sentencia*, no del fallo o veredicto de culpabilidad. Es decir, ésta no provee un vehículo para atacar colateralmente los errores anteriores al pronunciamiento de la sentencia.

([9]) En la jurisdicción federal se le ha dado igual significado. Véanse: *United States v. Morgan*, 346 U.S. 502, 506 (1954) ("Sentences subject to correction ... are those that the judgement of conviction did not authorize"); *Wright, Federal Practice and Criminal 2d* Sec. 582, pág. 381 (1982) ("A sentence is illegal within the meaning [of Rule 35] if it is in excess of the statutory provision, *or in some other way contrary to the applicable statute*" (énfasis suplido)).

([10]) Véase, además, *Bozza v. United States*, 330 U.S. 160 (1947).

*tad del tribunal para corregir una sentencia ilegal se ex-
tiende a hacer más onerosa la pena, en situaciones en que
la pena más benigna originalmente impuesta era contra-
ria a la ley.* (Énfasis suplido.) Chiesa Aponte, *op cit.*, pág.
562.[11]

Por el contrario, una sentencia legal se dicta dentro de
las facultades y los poderes del tribunal sentenciador. *Pue-
blo v. Lozano Díaz*, supra, pág. 838. No obstante, posterior-
mente el tribunal puede considerar como inadecuada una
sentencia legal, en cuyo caso, cualquier cambio queda su-
peditado a los términos y a las condiciones que impone la
Regla 185(a) de Procedimiento Criminal, *supra.* Transcu-
rridos los términos de esa regla y expirados los plazos para
presentar reconsideración, apelación, *certiorari* o relevo de
sentencia —según sea el caso— la sentencia dictada váli-
damente adviene final y firme, y los tribunales pierden ju-
risdicción para revisarla.

De otra parte, nuestro ordenamiento establece unos me-
canismos para que, en casos apropiados y pertinentes, un
convicto cumpla su sentencia fuera de prisión. Dentro de
éstos se encuentra el proceso establecido por la Ley de Sen-
tencia Suspendida. Al aplicar anteriormente esta ley, he-
mos reconocido que su propósito es hacer viable la política
pública de rehabilitación enunciada en la Sec. 19 del Art.
VI de la Constitución del Estado Libre Asociado de Puerto
Rico, L.P.R.A., Tomo 1, en cuanto fomenta la reintegración
del convicto a la sociedad como miembro productivo. *Pue-
blo v. Álvarez Rodríguez*, 154 D.P.R. 566 (2001).

No obstante este propósito, la referida ley también reco-
noce la necesidad de proveer para la seguridad de la comu-
nidad en general. Por esto, el legislador estableció unos
mecanismos para asegurar que personas peligrosas no re-

---

[11] A modo ilustrativo, en ocasiones anteriores hemos considerado ilegales aque-
llas sentencias que imponen penalidades que figuran fuera de los mínimos y máximos
dispuestos por ley, así como las que imponen un castigo distinto al establecido. Véanse:
*Pueblo v. Martínez Lugo*, 150 D.P.R. 238 (2000); *Pueblo v. Valdés Sánchez*, 140 D.P.R.
490 (1996); *Pueblo v. Bigio Pastrana*, 116 D.P.R. 748 (1985); *Pueblo v. Bell Pound*, 101
D.P.R. 41 (1973); *Pueblo v. Lozano Díaz*, 88 D.P.R. 834 (1963).

gresen innecesariamente a circular por las calles del país. Íd. A esos efectos, el Art. 2 de la Ley de Sentencia Suspendida, *supra*, según enmendada por la Ley Núm. 33 de 27 de julio de 1993, dispone en lo pertinente:

> El Tribunal de Primera Instancia podrá suspender los efectos de la sentencia que se hubiera dictado en todo caso de delito grave *que no fuere asesinato ... o cuando la persona utilice o intente utilizar un arma de fuego en la comisión de un delito grave o su tentativa ....* (Énfasis suplido.) 34 L.P.R.A. sec. 1027.

En *Pueblo v. Álvarez Rodríguez*, supra, tuvimos la oportunidad de interpretar el citado artículo. Ese caso trata sobre una mujer convicta por el delito de homicidio e infracción al Art. 6 (25 L.P.R.A. sec. 416) y al Art. 8 de la Ley de Armas, *supra*, ofensas por las que el TPI le impuso una pena de diez años en prisión por cada cargo de homicidio (2 cargos), y de tres y cinco años por los delitos bajo la Ley de Armas. Las penas se cumplirían concurrentemente y bajo el régimen de sentencia suspendida.

El Ministerio Público se opuso a esa sentencia. Alegó que la Ley de Sentencia Suspendida excluía expresamente de ese privilegio a toda persona que utilizara o intentara utilizar un arma de fuego en la comisión de un delito grave o su tentativa. El TCA no acogió el planteamiento del Ministerio Público; procedió a confirmar lo que resolvió el TPI. Inconforme, el Ministerio Público acudió ante nos mediante recurso de *certiorari*.

Luego de analizar las disposiciones de esa ley, resolvimos que tanto su letra como su historial legislativo exponen una inequívoca intención de excluir de sus beneficios a cualquier convicto de delito grave que utilice un arma de fuego. *Pueblo v. Álvarez Rodríguez*, supra, pág. 573. Citando de la Exposición de Motivos de la Ley Núm. 33 de 27 de julio de 1993, expresamos que

> [d]ado el peligro que representa para nuestra sociedad el que las personas que utilizan o intentan utilizar un arma de fuego en la comisión de un delito grave o su tentativa estén en la libre comunidad antes de que cumplan el término de reclusión que se

les imponga, esta ley excluye del beneficio de la sentencia suspendida y de la libertad bajo palabra a dichas personas. Íd.

Asimismo, concluimos en ese caso que nuestra decisión en *Pueblo v. Zayas Rodríguez*, 147 D.P.R. 530 (1999), no le aplicaba porque en ese caso se interpretaba el derecho vigente antes de la enmienda de 1993.([12])

Por lo tanto, es un hecho indiscutido que a partir de la enmienda que se introdujo mediante la Ley Núm. 33 de 27 de julio de 1993, es derecho positivo en Puerto Rico que aquellas personas que utilicen un arma de fuego para cometer un delito grave están excluidas del beneficio de la sentencia suspendida.

Conforme a este marco jurídico, resolvemos la controversia ante nos.

### III

En el caso de marras, el peticionario alega que el TCA actuó sin jurisdicción al revocar la sentencia enmendada del TPI de 17 de septiembre de 1997, toda vez que ésta era legal, había advenido final y firme, y el tribunal había denegado el auto para revisarla. Igualmente, arguye que de sostenerse el dictamen del TCA se estaría aplicando retroactivamente nuestra decisión de *Pueblo v. Álvarez Rodríguez*, supra. No tiene razón el peticionario.

Estamos patentemente ante un caso en el cual se dictó una sentencia ilegal. En la situación de autos, se halló cul-

---

([12]) En *Pueblo v. Zayas Rodríguez*, supra, nos enfrentamos a una situación en la que aplicaba la ley anterior a la enmienda de 1993, cuya letra e historial legislativo presentaban unas supuestas incongruencias que sembraban duda en cuanto a la intención del legislador de excluir de los beneficios de la sentencia suspendida aquellos delitos que se cometían utilizando un arma de fuego. En esa ocasión dirimimos la duda y resolvimos a favor del acusado. Sin embargo, la alegada incongruencia se corrigió mediante la enmienda de 1993, por lo que el raciocinio de *Zayas Rodríguez*, supra, no se aplica a los casos posteriores a esa decisión. *Pueblo v. Álvarez Rodríguez*, 154 D.P.R. 566, 572–573 (2001).

Igual lectura se debe hacer de *Pueblo v. Molina Virola*, 141 D.P.R. 713 (1996). De hecho, en ese caso expresamos que no se aplicó la enmienda de 1993, dado que los hechos en controversia eran anteriores a la entrada en vigencia de la enmienda. Íd., pág. 723 esc. 10.

pable al peticionario del delito de homicidio (delito grave), para lo que utilizó un arma de fuego para realizarlo. Además, los actos por los que resultó culpable ocurrieron el 6 de enero de 1995, fecha en que estaba vigente la enmienda realizada en julio de 1993 a la Ley de Sentencia Suspendida. Por consiguiente, al ser ese el derecho aplicable al momento de los hechos, incidió en error el TCA al modificar en 1997 la sentencia que válidamente dictó el TPI en octubre de 1995, a los efectos de que el peticionario cumpliera en probatoria la pena que se le impuso por los delitos de homicidio y agresión agravada. Al emitir un mandato a esos efectos, el TCA llevó al tribunal de instancia a dictar una sentencia ilegal, toda vez que estaba en clara contravención de lo dispuesto por una ley vigente. *Así, pues, conforme a lo dispuesto por la Regla 185(a) de Procedimiento Criminal, supra, resolvemos que cualquier tribunal, a petición de parte o motu proprio, tenía jurisdicción para corregirla en cualquier momento, mientras ésta no se hubiese extinguido.*

La mayoría, por el contrario, apoya desmedidamente su decisión en unas expresiones de este Tribunal en *Pueblo v. Bigio Pastrana*, 116 D.P.R. 748, 762 (1985), en la cual se señala que la corrección de una sentencia ilegal, según lo dispuesto en la citada Regla 185(a) de Procedimiento Criminal, corresponde *únicamente* al tribunal sentenciador, tras planteárselo el Ministerio Público. Nuestro criterio es que las referidas expresiones constituyen una interpretación limitada y errónea que no debemos reiterar o perpetuar. Adviértase, además, que lo señalado en ese caso sobre este particular está en conflicto con lo *resuelto* en *Pueblo v. Lozano Díaz*, supra, caso cuya controversia medular era la corrección de una sentencia ilegal, y cuyos fundamentos son similares a los que aquí esbozamos, y que *Bigio Pastrana*, supra, no revocó.[13]

El así resolver responde a nuestro deber de hacer cumplir cabalmente el mandato de la ley. Como expresáramos

---

[13] Véase *Pueblo v. Álvarez Rodriguez*, supra.

en *Pueblo v. Álvarez Rodríguez*, supra, pág. 574, el mero hecho de que podamos estar en desacuerdo con un mandato nunca será razón suficiente para ignorarlo. Asimismo, reiteramos que nuestro sistema político se fundamenta, primordialmente, en el derecho del pueblo a autogobernarse, siendo la Asamblea Legislativa el principal emblema de la voluntad democrática. Íd. Por ende, *independientemente de lo excepcionales que nos parezcan las circunstancias del caso ante nos*, no podemos resolver de un modo que contravenga de manera radical lo palmariamente establecido por el legislador. *Recordemos que la discreción judicial para otorgar el beneficio de sentencia suspendida, aunque es amplia, no es absoluta; está supeditada al fiel cumplimiento de todos los requisitos del Art. 2 de la Ley de Sentencia Suspendida, supra.*[14]

Conforme a esto, resolveríamos que actuó correctamente el TCA al corregir un error patente en la sentencia que revisaba, mientras el peticionario aún permanecía bajo la jurisdicción correccional del Estado y cuando la consecuencia de ese error era anular el dictamen recurrido.

Como último remedio, el peticionario puede invocar la clemencia ejecutiva al llevar su reclamo ante la Gobernadora de Puerto Rico. Véase *Pueblo v. Tribunal Superior*, 91 D.P.R. 539, 544 (1964).

## IV

Por los fundamentos que anteceden, concluiríamos que no erró el TCA al decidir que la sentencia enmendada de 17 de septiembre de 1997 fue ilegal, por lo que procedía su corrección conforme a la Regla 185(a) de Procedimiento Criminal, *supra.*

Por ser otro el criterio de la mayoría, disentimos.

---

[14] Véase, sobre este particular, *Pueblo v. Zayas Rodríguez*, supra, opinión disidente del Juez Asociado Señor Negrón García, a la cual se unieron los Jueces Asociados Señores Rebollo López y Corrada Del Río.