EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>vs<br><br>Wilfredo Montero Luciano<br><br>Peticionario | Certiorari<br><br>2006 TSPR 158<br><br>169 DPR _____ |

Número del Caso: CC-2005-1250

Fecha: 23 de octubre de 2006

Tribunal de Apelaciones:

        Región Judicial de Ponce Panel X

Juez Ponente:

        Hon. Zaida Hernández Torres

Abogados de la Parte Peticionaria:

        Lcdo. José Enrique Ralat Ballester

Oficina del Procurador General:

        Lcdo. Ricardo E. Alegría Pons
        Procurador General Auxiliar

Materia: Infracción Artículo 7.02

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

        vs.                 CC-2005-1250     CERTIORARI

Wilfredo Montero Luciano

    Peticionario

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 23 de octubre de 2006

Contra Wilfredo Montero Luciano se radicó una acusación ante el Tribunal de Primera Instancia, Sala Superior de Ponce, en la que se le imputó haber violado el Artículo 7.02 de la Ley Núm. 22 del 7 de enero de 2002, según enmendada, conocida como "Ley de Vehículos y Tránsito de Puerto Rico" al conducir un vehículo de motor en una vía pública bajo los efectos de bebidas embriagantes.[1]

---

[1] En lo pertinente, el Artículo 7.02 (a) dispone que:

> Es ilegal *per se*, que cualquier persona mayor de dieciocho (18) anos de edad conduzca o haga funcionar un vehiculo de motor, cuando su contenido de alcohol en su sangre sea de ocho (8) centésimas del uno (1) por ciento (.08%), o mas, según surja tal nivel o concentración del análisis químico o físico de su sangre, o de su aliento.

Específicamente, se le imputó arrojar un .179% de alcohol en la prueba de aliento a la cual se sometió.

El día de la vista en su fondo del caso, el acusado hizo alegación de culpabilidad por el delito imputado. El foro primario aceptó la referida alegación. Conforme lo dispuesto en el Artículo 7.07 de la Ley Núm. 22, dicho foro procedió a referir el caso a la Administración de Servicios de Salud Mental y contra la Adicción (ASSMCA), ordenando que rindiera el correspondiente informe presentencia.[2]

Según ordenado, ASSMCA rindió su informe. En el mismo se indicó que el acusado había sido convicto previamente por el delito de conducir en estado de embriaguez.[3]

En la vista para dictar sentencia la defensa del acusado alegó que la referida convicción anterior no había sido alegada por el ministerio público en la acusación. Por esta razón, solicitó que la misma no fuera tomada en consideración para efectos de la sentencia.

---

[2] A esos efectos, el Artículo 7.07(a) dispone que el tribunal ordenará a la Administración de Servicios de Salud Mental y contra la Adicción que se efectúe una investigación minuciosa y le rinda un informe dentro de los treinta (30) días siguientes a la orden.

[3] Las convicciones anteriores tienen fechas del 26 y 30 de mayo de 1998 y una del 18 de febrero de 2004, todas dictadas por el Tribunal de Primera Instancia, Sala Superior de Ponce. Según el Artículo 7.04 (b)(5) de la Ley, luego de transcurridos tres años a partir de una convicción bajo las disposiciones de la Ley, no se tomará ésta en consideración en casos de convicciones subsiguientes. De conformidad con ello, solo la convicción del 18 de febrero de 2004 podía ser considerada para efectos de la reincidencia.

En respuesta a lo anterior, el ministerio público hizo dos planteamientos. El primero: que según el Artículo 7.04 (b)(4) de la Ley, referente a las penas, la alegación de reincidencia no tenía que ser plasmada por el fiscal en la acusación ya que ésta se podía evidenciar en el informe presentencia.[4]

El segundo planteamiento del fiscal fue a los efectos de que el Artículo 7.04 (b)(5) establece que basta que se establezca el hecho de reincidencia mediante el informe presentencia o mediante el informe de antecedentes penales.[5]

---

[4] El referido artículo de ley establece que:

> En casos de segunda convicción y subsiguientes, el tribunal también ordenará la confiscación del vehículo de motor que conducía el convicto bajo los efectos del alcohol o bajo los efectos de sustancias controladas, al momento de ser intervenido, con sujeción a las secs. 1723 *et seq*. del Título 34, conocidas como "Ley Uniforme de Confiscaciones", si dicho vehículo está inscrito en el Registro de Vehículos de Motor a nombre del convicto y la convicción anterior fue adjudicada en el periodo de cinco (5) años anteriores a la fecha de la nueva convicción. La alegación de reincidencia no tiene que ser alegada por el fiscal en la denuncia. Ésta se evidenciará en el informe presentencia. (Énfasis nuestro).

[5] La mencionada disposición estatutaria establece que:

> Luego de transcurridos tres (3) años contados a partir de una convicción bajo las disposiciones de esta sección, no se tomará ésta en consideración en caso de convicciones subsiguientes. Para que el tribunal pueda imponer las penas por reincidencia establecidas en esta sección, no será necesario que se haga alegación de reincidencia en la denuncia o en la acusación.

(Continúa . . .)

En base a lo anteriormente expresado, el ministerio público sostuvo que la pena que debía imponérsele a Montero Luciano era aquella correspondiente a una segunda convicción, según el Artículo 7.04 (b)(2), que dispone que, por la segunda convicción, la persona será sancionada con pena de multa no menor de quinientos (500) dólares ni mayor de setecientos cincuenta (750) dólares y cárcel por un término de quince (15) a treinta (30) días y pena de restitución de ser aplicable. Además, el referido estatuto dispone que se suspenderá la licencia de conducir por un término de seis (6) meses.

Luego de escuchar los planteamientos del ministerio fiscal, el foro primario determinó que la reincidencia tenía que ser alegada en la acusación. Procedió entonces dicho foro a dictar sentencia, conforme al Artículo 704 (b)(1), el cual establece la pena para una primera convicción, condenando al acusado al pago de una multa de $300, el pago de costas, más un arancel de $50. El referido foro también ordenó la suspensión de su licencia de conducir por un término de 30 días y a someterse al Programa de Rehabilitación de la Administración de Salud Mental y contra la Adicción. Esto es, dicho foro no tomó en consideración la alegación de reincidencia presentada en el informe presentencia.

---

Bastará que se establezca el hecho de la reincidencia mediante el informe presentencia o mediante certificado de antecedentes penales. (Énfasis nuestro).

Inconforme con la sentencia dictada, el ministerio público presentó una moción de <u>corrección de sentencia ilegal</u> a tenor con la Regla 185 de Procedimiento Criminal, 34 L.P.R.A. Ap. III, R. 184. En síntesis, planteó que la sentencia del foro primario era ilegal y errónea por no haber sido dictada conforme al Artículo 7.04, Incisos (b)(2) y (b)(4), los cuales establecen la pena correspondiente en casos de una segunda convicción.[6] En otras palabras, el fiscal alegó que en la medida en que la sentencia dictada por el foro de instancia no tomaba en cuenta la reincidencia del acusado, habiéndose establecido este hecho claramente mediante el informe presentencia, ésta era una ilegal.

Examinada la referida moción, el foro primario la declaró no ha lugar. El Procurador General acudió ante el Tribunal de Apelaciones, mediante recurso de *certiorari*, en revisión de la orden del tribunal de instancia negándose a corregir la sentencia ilegal. En el recurso presentado, el Procurador reprodujo, en síntesis, los planteamientos hechos por el fiscal en su moción de corrección de sentencia ilegal.

---

[6] Específicamente, una multa no menor de $500 ni mayor de $750, cárcel por un término de 15 a 30 días y suspensión de la licencia por un término de 6 meses. El Artículo 7.04 (b)(4) también provee para la confiscación del vehículo conducido por el convicto bajo los efectos del alcohol.

En la sentencia que dictó a esos efectos, el foro intermedio apelativo concluyó que la Ley Núm. 22, <u>era clara</u> al disponer que en estos casos no era necesario alegar la reincidencia en la denuncia o acusación y que bastaba que se estableciera la misma en el informe presentencia o mediante el certificado de antecedentes penales. Determinó, que la pena correcta que debía imponérsele a Montero Luciano era la pena establecida en el Artículo 7.04, Incisos (b)(2) y (b)(4). Según dicho foro, el Tribunal Supremo de los Estados Unidos en el caso de <u>Almendarez- Torres</u> v. <u>U.S.</u>, 523 U.S. 224 (1998), estableció que no violaba la cláusula constitucional de debido proceso de ley el hecho que la reincidencia no tuviese que ser alegada en el pliego acusatorio por no ser ésta un elemento constitutivo del delito.

Por consiguiente, el foro apelativo intermedio resolvió que el foro primario había abusado de su discreción al no tomar en consideración la convicción previa de Montero Luciano al momento de dictar sentencia. Resolvió, además, que dicha sentencia era ilegal por su inobservancia del texto claro de la ley. En fin, el referido foro <u>revocó</u> la sentencia dictada por el Tribunal de Primera Instancia y devolvió el caso a éste foro para que sentenciara a Montero Luciano nuevamente.

Inconforme, Montero Luciano acudió ante este Tribunal mediante recurso de *certiorari*. En síntesis, alega que el foro intermedio apelativo incidió al resolver aplicando el

Artículo 7.04 de la Ley de Tránsito, el cual constituye una disposición legal injusta e inconstitucional por violar la cláusula de debido proceso de ley al negarle una notificación adecuada de los cargos en su contra.[7]

Expedimos el recurso. Contando con la comparecencia de las partes, procedemos a resolver.

---

[7] No entraremos a discutir uno de los errores alegados por el peticionario, a los efectos de que el recurso de *certiorari* presentado por el ministerio fiscal ante el Tribunal de Apelaciones fue presentado fuera de término. El recurso ante el foro apelativo fue presentado en tiempo, esto es, dentro del término de 30 días de haberse notificado la resolución declarando no ha lugar la moción de corrección sentencia ilegal.

Por otro lado, la Regla 185 de Procedimiento Criminal, ante, dispone que el tribunal sentenciador podrá corregir una sentencia ilegal en cualquier momento. Hemos interpretado la anterior disposición para establecer que cualquier parte perjudicada por la sentencia tiene facultad para solicitar la corrección de una sentencia ilegal o errónea en cualquier momento. Pueblo v. Martínez Lugo, 150 D.P.R. 238 (2000); Pueblo v. Tribunal Superior, 94 D.P.R. 220 (1967). La razón de ser de esto es que si una sentencia no se ajusta a la pena establecida por ley, el tribunal tiene autoridad para dictar una nueva sentencia y que una sentencia dictada contrario a lo que dispone la ley es nula o inexistente, por lo que puede ser reconsiderada en cualquier momento. Pueblo v. Lozana Díaz, 88 D.P.R. 834 (1963).

En el presente caso, el fiscal entendió que la sentencia dictada por el tribunal de instancia era ilegal, ya que la reincidencia fue establecida mediante el informe presentencia, tal y como lo permite el Artículo 7.04, y aun así, dicho foro dispuso una pena menor de la correspondiente. En consecuencia, la moción de sentencia ilegal era un recurso apropiado para cuestionar la sentencia dictada.

I

La cláusula de debido proceso de ley, consagrada en la Sección 7 del Artículo II de la Constitución[8], ha sido denominada como la disposición matriz de la garantía de los derechos individuales ante la intervención injustificada del Estado con el ciudadano. Pueblo v. Vega, 198 D.P.R. 980 (1999). Dicha cláusula abarca dos dimensiones: la sustantiva y la procesal.

La vertiente sustantiva protege los derechos y libertades que le concede la Constitución de Puerto Rico y la de Estados Unidos a los ciudadanos frente a la formulación de política pública por el Estado por vía legislativa o a través de reglamentación aprobada por las agencias del Poder Ejecutivo. Rosario v. Departamento de la Familia, res. el 21 de junio de 2002, 2002 TSPR 84. Bajo el debido proceso sustantivo, los tribunales examinan la validez de una ley, a la luz de los preceptos constitucionales pertinentes, con el propósito de proteger los derechos fundamentales de las personas. Bajo este análisis, el Estado, al aprobar leyes o al realizar alguna actuación, no puede afectar de manera irrazonable, arbitraria o caprichosa los intereses de propiedad o libertad. *Ibid*.

---

[8] La misma dispone, en lo aquí pertinente, que:

> […]Ninguna persona será privada de su libertad o propiedad sin debido proceso de ley…

Por su parte, la vertiente procesal le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y propiedad del individuo sólo ocurra mediante un procedimiento justo y equitativo. Rosario & Assoc. v. Departamento de la Familia, res. el 21 de junio de 2002, 2002 TSPR 84; U. Ind. Emp. A.E.P. v. A.E.P., 146 D.P.R. 611 (1998); Rivera Rodríguez v. Stowell Taylor, 133 D.P.R. 881 (1993).

Esta protección que ofrece el debido proceso de ley, en su vertiente procesal, se activa cuando existe un interés individual de libertad o propiedad. U. Ind. Emp. A.E.P. v. A.E.P., ante; Rivera Santiago v. Srio. de Hacienda, 119 D.P.R. 265 (1987).

Al examinar la validez constitucional de una ley por alegada violación al debido proceso en su vertiente procesal, y una vez se cumpla con la existencia de un interés propietario o de libertad, es preciso determinar cuál es el procedimiento exigido. Rivera Santiago v. Srio. de Hacienda, ante; U. Ind. Emp. A.E.P. v. A.E.P., ante. Si bien la característica medular es que el procedimiento debe ser justo, a través de la jurisprudencia normativa se han identificado componentes básicos del debido procedimiento de ley, tales como una notificación adecuada y la oportunidad de ser oído y de defenderse, derecho a contrainterrogar testigos y a examinar evidencia presentada en su contra; tener asistencia de abogado y que la decisión se base en evidencia que conste en el record.

Véase: Rodríguez Rivera v. Stowell Taylor, ante; U. Ind. Emp. A.E.P. v. A.E.P., ante.

A

Sabido es que en nuestro ordenamiento procesal penal la protección a la debida notificación al acusado de los cargos presentados en su contra tiene rango constitucional. Tal protección se desprende de la cláusula de debido proceso de ley, y de la Sección 11 del Artículo II de nuestra Constitución. Esta última dispone, en lo aquí pertinente que:

> En todos los procesos criminales, el acusado disfrutará del derecho a un juicio rápido y público, a ser notificado de la naturaleza y causa de la acusación recibiendo copia de la misma, a carearse con los testigos de cargo, a obtener la comparecencia compulsoria de testigos a su favor, a tener asistencia de abogado, y a gozar de la presunción de inocencia.

El debido proceso de ley exige que el acusado esté adecuadamente informado de la naturaleza y extensión del delito que le ha sido imputado. Pueblo v. González Olivencia, 116 D.P.R. 614 (1985). El ministerio público cumple con este deber de información por medio de la acusación o denuncia. A esos efectos, la Regla 35(c) de Procedimiento Criminal, 34 L.P.R.A. Ap. II R.35 (c), dispone que cuando se imputa la comisión de un delito específico, la acusación o denuncia deben incluir una

exposición de todos los hechos constitutivos del mismo.[9] Pueblo v. Calviño Cereijo, 110 D.P.R. 691, 693 (1981); Pueblo v. Santiago Cedeño, 106 D.P.R. 663, 666 (1978).

Este requisito, tanto constitucional como estatutario, se cumple con una acusación o denuncia que incluya una exposición de los hechos esenciales constitutivos del delito, redactada en lenguaje sencillo, claro y conciso para que pueda entenderla cualquier persona de inteligencia común. Pueblo v. Flores Betancourt, 124 D.P.R. 867 (1989). A esos efectos, hemos expresado que para cumplir con lo anterior, no se le exige al ministerio público ningún lenguaje estereotipado, técnico o talismánico en su redacción ni el uso estricto de las palabras dispuestas en el estatuto. Pueblo v. Calviño Cereijo, ante. Sólo se le exige que el contenido,

---

[9] El texto completo del Inciso (c) de la Regla 35 de Procedimiento Criminal es el siguiente:

> La acusación y la denuncia deberán contener:
> (…)
> (c) Una exposición de los hechos esenciales constitutivos del delito, redactada en lenguaje sencillo, claro y conciso, y de tal modo que pueda entenderla cualquier persona de inteligencia común. Las palabras usadas en dicha exposición se interpretarán en su acepción usual en el lenguaje corriente, con excepción de aquellas palabras y frases definidas por ley o por la jurisprudencia, las cuales se interpretarán en su significado legal. Dicha exposición no tendrá que emplear estrictamente las palabras usadas en la ley, y podrá emplear otras que tuvieren el mismo significado. En ningún caso será necesario el expresar en la acusación o denuncia presunciones legales ni materias de conocimiento judicial.

no el epígrafe, de la acusación o denuncia exponga todos los hechos constitutivos del tipo delictivo.

Así, la función de la acusación o denuncia es crucial para el acusado pues, por virtud de ella, el acusado adviene en conocimiento de los hechos que se le imputan, de suerte que pueda preparar su defensa de conformidad. Pueblo v. Ríos Alonso, 156 D.P.R. 423 (2002); Pueblo v. Meléndez Cartagena, 106 D.P.R. 338 (1977).

B

La importancia de una adecuada notificación tiene efectos trascendentales en todo procedimiento criminal llevado por el Estado contra un individuo. Ejemplo de ello lo es la situación en que un acusado hace alegación de culpabilidad. En dicha instancia, la "acusación" o "denuncia" cobra particular importancia ya que es en virtud de lo que ésta expone que el acusado se declara culpable.

Sabido es que bajo nuestro ordenamiento procesal criminal una persona acusada de cometer un delito, de ordinario, sólo puede hacer una de dos alegaciones: culpable o no culpable. Una alegación de culpabilidad constituye una renuncia de los derechos constitucionales o estatutarios que protegen a los acusados, entre los cuales se encuentran: el derecho a que se establezca su culpabilidad más allá de duda razonable; el derecho a un juicio justo, imparcial y público; el derecho a ser juzgado ante un juez o jurado; y el derecho a presentar

evidencia a su favor y a rebatir la prueba presentada en su contra. _Pueblo v. Santiago Agricourt_, 147 D.P.R. 179 (1998) (escolio núm. 10); _Pueblo v. Figueroa García_, 129 D.P.R. 798 (1992); _Pueblo v. Torres Nieves_, 105 D.P.R. 340, 350 (1976); _Díaz Díaz v. Alcaide_, 101 D.P.R. 846, 854 (1973).

Por causa de los derechos fundamentales garantizados por la Constitución y las leyes, que se renuncian cuando un acusado se declara culpable, el procedimiento debe ser bien riguroso y debe estar rodeado de todas las garantías posibles. Por tal razón, la Regla 70 de Procedimiento Criminal, 34 L.P.R.A. Ap.II, R. 70, establece que para aceptar una alegación de culpabilidad, el tribunal tiene que determinar, prioritariamente, si la misma se efectúa "voluntariamente, con conocimiento de la naturaleza del delito imputado y de las consecuencias de dicha alegación".

En ese sentido, este Tribunal ha señalado que para poder aceptar una alegación de culpabilidad, el magistrado debe cerciorarse de que la renuncia de garantías procesales que conlleva tal alegación sea "expresa, personal, voluntaria e inteligente", _Pueblo v. Torres Nieves_, 105 D.P.R. 340, 350 (1975), y con conocimiento de los derechos a los que renuncia y de las consecuencias que la alegación conlleva. Véase: _Díaz Díaz v. Alcaide_, ante, pág. 854.

Específicamente, en <u>Díaz Díaz</u> v. <u>Alcaide</u>, ante sostuvimos la importancia de que, al momento de determinar si la declaración de culpabilidad fue voluntaria y hecha de forma inteligente, el juez se cerciorara de que el acusado estuviera consciente de los hechos que se le imputaban, entre ellos, <u>informarle de la pena que el delito por el cual se declaraba culpable conllevaba, haciéndole saber el mínimo y el máximo</u>. Pág. 857.

C

Por otro lado, en un proceso criminal, el acusado solamente puede ser juzgado por el delito imputado en la acusación. Conforme a ello, la Regla 48 de Procedimiento Criminal, 34 L.P.R.A. Ap.II, R.48, establece que una acusación o denuncia no deberá contener alegación alguna de convicciones anteriores del acusado, <u>a menos que</u> una alegación en tal sentido fuere necesaria para imputar la comisión de un delito, <u>o para alegar la condición de reincidente</u>, de subsiguiente o de delincuencia habitual en relación con el acusado.[10]

<u>La mencionada disposición reglamentaria establece, expresamente, la obligación del ministerio público de</u>

---

[10] La Regla 48 de Procedimiento Criminal dispone que:

> Una acusación o denuncia no deberá contener alegación alguna de convicciones anteriores del acusado, a menos que una alegación en tal sentido fuere necesaria par imputar la comisión de un delito, <u>o para alegar la condición de reincidente, de subsiguiente</u> o de delincuencia habitual en relación con el acusado. (Énfasis nuestro).

alegar las convicciones anteriores del acusado en la acusación o denuncia, si pretende establecer la condición de reincidente y que se le imponga una pena mayor al acusado de ser éste convicto. Dicha disposición forma parte de la protección constitucional del acusado de estar debidamente informado de los cargos en su contra, y con la obligación del fiscal de probar todos los elementos de un delito más allá de duda razonable.

Cuando en una acusación se alegan, para efectos de reincidencia, convicciones previas del acusado, éste tiene dos opciones: aceptar las convicciones anteriores, o negarlas. Cada una de estas instancias tiene sus consecuencias importantes en el ordenamiento penal. La primera, si el acusado acepta las convicciones previas, el fiscal no puede hacer mención de éstas durante el juicio. La admisión de la convicción previa de parte del acusado releva al fiscal de probar la comisión de los delitos anteriores alegados en la acusación. La segunda consecuencia: si el acusado no las acepta, el fiscal está en la obligación de probar las convicciones anteriores durante el juicio, como cualquier otro elemento del delito. Véase: Pueblo v. García García, 98 D.P.R. 827 (1970).[11]

---

[11] Véase a tales efectos la Regla 68 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 68:

Cuando la acusación imputare delito en grado de reincidencia o subsiguiente o delincuencia

(Continúa . . .)

En resumen, vemos que nuestro ordenamiento procesal penal le brinda al acusado ciertas protecciones --algunas incorporadas por acción legislativa mediante las reglas de Procediendo Criminal, otras garantizadas por la Constitución-- que forman parte del debido proceso de ley. Entre éstas, y como vimos, una adecuada notificación de los cargos por los cuales se le acusa, conocimiento de las consecuencias que conlleva una alegación de culpabilidad, y la garantía que sus convicciones anteriores, como regla general, no serán alegadas en la acusación a menos que sean necesarias para sostener la condición de reincidente. Reglas 35 (c), 70, y 48 de Procedimiento Criminal, respectivamente.

## II

Con este trasfondo en mente, pasemos a analizar las disposiciones de la Ley de Vehículos y Tránsito aquí en controversia.

### A

Conducir bajo los efectos de bebidas embriagantes constituye un delito menos grave, según dispuesto por la

_____

habitual, el acusado podrá, al momento de hacer alegación, o en cualquier ocasión posterior siempre que fuere antes de leerse la acusación al jurado, admitir la convicción o convicciones anteriores y, en tal caso, no se hará saber al jurado en forma alguna la existencia de dicha convicción o convicciones.

Ley de Vehículos y Tránsito, ante, Artículo 7.04 (a). El mencionado cuerpo reglamentario fue <u>enmendado recientemente</u> por la Ley Núm. 132 del 3 de junio de 2004. Entre las enmiendas introducidas por la referida Ley se encuentran aquellas <u>relativas a las penalidades</u> por violaciones a la misma, <u>en específico, aquellas relativas al aspecto de la reincidencia.</u>

En cuanto a dicho aspecto, las disposiciones legales anteriormente expuestas, Artículo 7.04, Incisos (b)(4) y (b)(5), contienen un lenguaje claro y específico. Esto es, la Ley de Vehículos y Tránsito, según enmendada, establece mediante estos dos incisos que para evidenciar la condición de reincidente del acusado, el fiscal <u>no</u> tiene que alegarlo en la denuncia, sino que es suficiente que este hecho se evidencie en el informe presentencia. Además, se establece que para que el tribunal pueda imponer las penas por reincidencia no será necesario que se haga alegación en la denuncia o en la acusación, sino que basta con que se establezca este hecho mediante el informe presentencia o mediante el certificado de antecedentes penales. Ello fue implantado por el legislador por medio de una enmienda específica a la Ley Núm. 22.

Por otro lado, es de notar que el Artículo 7.07(a) establece que el informe presentencia que la ASSMCA deberá rendir al tribunal incluirá los antecedentes penales e historial de la persona convicta en relación con el uso de

bebidas embriagantes o de drogas narcóticas, marihuana o sustancias estimulantes o deprimentes que le permita determinar si dicha persona se beneficiaría del programa de rehabilitación establecido y aprobado por la Administración de Servicios de Salud Mental y contra la Adicción en coordinación con el Departamento de Transportación y Obras Publicas. En el informe se hará constar si el convicto es reincidente.[12]

En consecuencia, no se requiere mayor análisis para determinar que el Artículo 7.04, en cuanto exime al fiscal de alegar la reincidencia en la denuncia, es contradictorio a las disposiciones de la Regla 48 de Procedimiento Criminal. La interrogante, en consecuencia, es si dicho Artículo viola la cláusula de debido proceso de ley de la Constitución.

B

Nuestra jurisprudencia ha analizado la validez constitucional de estatutos que imponen penas mayores a aquellas personas que han sido convictas por delitos en más de una ocasión. Al sostener la constitucionalidad de los mismos, hemos realizado un análisis de los propósitos de la Asamblea Legislativa al imponer dichas penalidades mayores a los delincuentes habituales. En Pueblo v. Reyes

---

[12] El referido estatuto dispone claramente cuáles son las penas a imponerse en casos de una segunda, tercera y subsiguientes convicciones, es decir, en casos en que el acusado sea reincidente.

Morán, 123 D.P.R. 786 (1989), este Tribunal analizó los propósitos de los estatutos sobre delincuencia habitual de varias jurisdicciones estatales y expresó que los mismos son, en síntesis: disuadir a posibles delincuentes reincidentes, penalizar la repetición de conducta delictiva, y castigar de una manera más severa a aquellos que con su conducta delictiva repetitiva han demostrado que no están capacitados para adaptarse a las reglas sociales establecidas por los estatutos penales.[13] En dichas jurisdicciones se sostuvo que los estados tenían un interés válido en penalizar a aquellas personas que demostraran, a través de conducta delictiva repetida, una persistente tendencia a delinquir y a comportarse contrario a las normas de convivencia social. En fin, en dichos casos se determinó que los estatutos que imponían penas más severas a los delincuentes habituales sobrevivían todo tipo de ataque constitucional bajo las cláusulas de debido proceso, igual protección de las leyes, aplicación retroactiva de las leyes, castigos crueles e inusitados, doble exposición, y privilegios en inmunidades. Rummel v. Estelle, ante; Oyler v. Boyle, ante; Gryger v. Burke, 334 U.S. 728 (1948), entre otros.

---

[13] Véanse: Graham v. West Virginia, 224 U.S. 616 (1912); State v. Pierce, 283 N.W.2d 6 (Neb. 1979) y Rummel v. Estelle, 445 U.S. 263 (1980).

En el citado caso de <u>Pueblo</u> v. <u>Reyes Morán</u>[14], ante, resolvimos que la imposición de una penalidad adicional, para quien hubiese sido convicto en más de dos ocasiones, era parte de las prerrogativas constitucionales de la Asamblea Legislativa, y que la misma podía legislar para imponer a los delincuentes habituales una penalidad mayor dentro de la autoridad que constitucionalmente le asistía para imponer castigos.[15]

<u>La controversia específica hoy ante nuestra consideración no ha sido objeto de análisis, anteriormente, por este Tribunal.</u> La misma se circunscribe a determinar si viola la cláusula de debido proceso el hecho de que la reincidencia no sea alegada en la denuncia o acusación. Entendemos procedente examinar la jurisprudencia del Tribunal Supremo de los Estados Unidos sobre este tema.

Dicho Tribunal atendió y resolvió una controversia similar en el caso <u>Almendarez-Torres</u> v. <u>U.S.</u>, 523 U.S. 224 (1998). Allí se analizó un estatuto que disponía una pena máxima de 20 años en el caso de un extranjero, que ya

---

[14] En específico, en dicho caso se sostuvo que el entonces vigente Artículo 74 del Código Penal de 1974, según enmendado, al establecer una presunción incontrovertible sobre la "tendencia a delinquir" del acusado reincidente, no requería de una vista previa en que el acusado pudiera controvertir dicha presunción antes de ser declarado delincuente habitual, ni violaba su oportunidad de ser oído.

[15] A esos efectos tanto el derogado Código Penal de 1974 como el Nuevo Código Penal de 2004 definen la reincidencia y sus grados.

hubiese sido deportado previamente, regresara a los Estados Unidos y el juez determinara que esa deportación previa se debió a una convicción por un delito agravado. 18 U.S.C. § 1326 (b)(2).

El acusado en dicho caso alegó que en la acusación presentada en su contra no se había hecho mención sobre alegadas convicciones anteriores y que, en consecuencia, el tribunal no podía sentenciarlo imponiendo una pena más alta de la máxima permitida para acusados sin convicciones previas. Al examinar el planteamiento del acusado, el máximo foro federal formuló la interrogante en términos de si la disposición penal en controversia definía la reincidencia como un delito separado, o únicamente, como un factor a considerar al momento de dictar sentencia e imponer la pena.

Al hacer el análisis anterior, el Tribunal partió de la normativa de que una acusación tiene que exponer todos los elementos del delito que se le imputa al acusado. A diferencia de lo anterior, expresó el referido Foro que la acusación no tiene que exponer todos los factores que sean relevantes, _únicamente_, para efectos de dictar la sentencia, de encontrarse culpable al acusado. Por ello, el Tribunal razonó que si el estatuto en controversia definía la convicción anterior como un delito nuevo y separado, éste tenía que ser alegado en la acusación. Por el contrario, de tratarse sólo de un factor que agravaba la pena, el mismo no tenía que ser alegado en la

acusación. El Tribunal resolvió el caso conforme esta última posición, es decir, que la reincidencia no era necesaria para probar el delito imputado y que por tanto, en estos casos, esta no tenía que alegarse en la acusación ya que la reincidencia no se relacionaba con la comisión del delito sino que se relacionaba, únicamente, con la pena.[16]

En una decisión posterior, el Supremo federal reiteró la distinción entre "hechos que son elementos del delito" y "hechos relevantes únicamente para dictar sentencia". En Castillo v. U.S., 530 U.S. 120 (2000), el Tribunal expresó que lo importante en dicho análisis era si el estatuto penal, en el que el juez se amparaba para imponer una pena más alta, definía un delito separado (si se refería a un delito o ofensa), o simplemente lo autorizaba a aumentar la pena. El Tribunal determinó que el análisis anterior requería un examen del estatuto, es decir, de su lenguaje específico, para determinar si constituía un delito separado.

Precisa señalar que en este caso, al tratarse de un delito para el cual se proveía juicio por jurado, el Tribunal expresó que en casos donde la determinación de un

---

[16] Es menester señalar, en este punto, que la decisión de Almendarez, ante, es contraria a una decisión previa del Tribunal Supremo de Estados Unidos en el caso de Oyler v. Boyles, 368 U.S. 448, 452 (1962), en el cual se estableció que un acusado tenía que recibir una notificación razonable y una oportunidad de ser oído con relación al cargo de reincidencia.

hecho particular fuera esencial para la imposición de la pena, este hecho tenía que ser determinado por el jurado, ya que el estándar de prueba en esos caso era el de "prueba más allá de duda razonable", un estándar mucho más riguroso que el que utilizaría el juez para determinar el referido hecho, que sería "preponderancia de la prueba". A tales efectos dicho Foro expresó, en lo pertinente, que:

> There is no reason to think that Congress would have wanted a judge's view to prevail in a case of so direct a factual conflict, particularly when the sentencing judge applies a lower standard of proof and when 25 additional years in prison are at stake. Pág. 128.

El Tribunal resolvió que el estatuto en controversia, al establecer los factores que el juez podía tomar en consideración para dictar sentencia, se refería a un elemento de un delito separado y agravado. Por lo cual se trataba de la instancia de un "separate crime", según Almendarez, ante. Vemos, en consecuencia, que aun cuando se reiteró la antes mencionada distinción entre "hechos que son elementos del delito" y "hechos relevantes únicamente para dictar sentencia", el Tribunal Supremo federal resolvió a favor de que los hechos que tendiesen a aumentar la pena, fuesen considerados por el jurado y no determinados por el juez.

Aun cuando ninguno de estos casos ha sido expresamente revocado, decisiones posteriores del Tribunal Supremo revelan un alejamiento sustancial de los precedentes de Almendarez, y Castillo, ante, y un

abandono de la distinción "elementos del delito" versus "elementos para dictar sentencia". En dichas decisiones posteriores se ha adoptado la norma que cualquier hecho que tienda a aumentar una sentencia tenga que ser alegado en la acusación y probado por el ministerio público más allá de duda razonable.

El primer ejemplo de ello lo es el caso de Apprendi v. New Jersey, 530 U.S. 466 (2000). Aquí, la controversia giró en torno a si violaba la cláusula de debido proceso de ley de la Decimocuarta Enmienda de la Constitución de los Estados Unidos un estatuto del estado de Nueva Jersey que permitía que un juez, al momento de dictar sentencia, utilizara factores que desfilaron durante el juicio, como elementos que autorizaran un aumento en la pena máxima de un delito, en vez que dichos factores pasaran a la consideración del jurado utilizando el criterio de "prueba más allá de duda razonable".[17]

En dicho caso, se trataba de un agravante estatutario, de "actos motivados con la intención de intimidar cierto grupo", el cual no fue alegado por el

---

[17] Según el estatuto de Nueva Jersey, constituía un delito en segundo grado, con pena entre 5 a 10 años, utilizar un arma de fuego para propósitos ilegales. N.J.Stat.Ann. § 2C:39-4(a). Ahora bien, el estatuto en controversia disponía que ésta pena podía ser aumentada entre 10 a 20 años si el juez, por preponderancia de la prueba, determinaba que el delito había sido cometido con el propósito de intimidar a un individuo o grupo de individuos por razones de raza, color, género, impedimento, religión, orientación sexual o origen étnico. N.J.Stat.Ann. § 2C:44-3(e).

ministerio público en la acusación. El acusado había realizado una alegación preacordada con el ministerio público declarándose culpable, entre otros cargos, del delito en segundo grado de utilizar un arma de fuego con propósitos ilegales. Para este delito la pena era de entre un mínimo de 5 años y un máximo de 10 años. Por no estar alegado en la acusación, el acusado no se declaró culpable del agravante de "actos motivados con la intención de intimidar cierto grupo". Sin embargo, al momento de dictar sentencia, y tal y como lo permitía el estatuto, el juez tomó en consideración que el acusado había realizado el delito motivado por prejuicios raciales ("hate crime"). Por consiguiente, condenó al acusado a 12 años de prisión por ese cargo, una pena mayor que la contemplada para el delito sin el agravante.

En este caso, el Tribunal Supremo analizó la interrogante en forma distinta que en Almendarez, ante. La decisión del Tribunal Supremo de los Estados Unidos en Apprendi, ante, fue a los efectos de que, cónsono con la historia de la jurisprudencia penal y la importancia del "jury trial", todo elemento que pudiese agravar la pena del acusado tenía que pasar por la consideración del jurado.

Hay que señalar que en Apprendi, ante, la decisión de Almendarez, ante, no fue revocada. Más bien, se expresó que Almendarez, ante, era una decisión **excepcional** que se

apartaba de la práctica pasada de los tribunales.[18] Se expresó, además, que las protecciones del debido proceso y del derecho a juicio por jurado se extendían a determinaciones que no se relacionan con la "culpabilidad" del acusado, sino que se relacionaran a la extensión de su sentencia. Por esta razón, en la decisión de Apprendi, ante, el Tribunal expuso que aunque la decisión de Almendarez debía limitarse exclusivamente a casos sobre reincidencia: "…it is arguable that Almendarez-Torres was incorrectly decided and that a logical application of our reasoning today should apply if the recidivist issue were contested…" (Énfasis nuestro).[19]

Las decisiones posteriores del Tribunal Supremo de los Estados Unidos relativas a este tema han seguido reafirmando la decisión de Apprendi, ante, en cuanto a que factores que aumenten la pena a la que pueda estar expuesto un acusado deben ser considerados por el jurado. En Blakely v. Washington, 542 U.S. 296 (2004), el acusado formuló su alegación a los efectos que el hecho que el juez, al momento de dictar sentencia, pudiera tomar en

---

[18] "Any possible distinction between an 'element' of a felony offense and a 'sentencing factor´ was unknown to the practice of criminal indictment, trial by jury and judgment by court…" pág. 478.

[19] En específico, el Tribunal federal indicó que en Almendarez, ante, no había problema de violación constitucional porque las convicciones previas que se tomaron en consideración habían sido admitidas en cada uno de los procesos criminales en los cuáles éstas se dilucidaron.

consideración un hecho que no fue admitido por él ni determinado probado por un jurado, violaba su derecho a juicio por jurado protegido por la Sexta Enmienda.[20]

Al analizar el planteamiento del acusado y resolver dicho caso, el Tribunal Supremo reafirmó lo ya resuelto en Apprendi, ante. En ese sentido la discusión se centró en hasta que punto podía una legislatura otorgarle el poder al juez de aumentar la pena máxima dispuesta para un delito en particular sin que dicha acción violara el derecho a juicio por jurado. El Tribunal acogió el argumento del acusado y resolvió que en efecto, el derecho a juicio por jurado protegido por la Sexta Enmienda requería que cualquier factor distinto a una convicción previa que pudiera agravar la pena máxima estatutaria de un delito, tenía que ser sometido al jurado y probado más allá de duda razonable.

Aun cuando las anteriores decisiones del Tribunal Supremo de los Estados Unidos aparezcan un tanto contradictorias, lo cierto es que la posición relativa a la distinción entre "factores que constituyen elementos del delito" y "factores relevantes al momento de dictar

---

[20] En ese caso, el acusado, mediante una alegación preacordada, se declaró culpable del delito de secuestro en segundo grado, para el cual la pena era una de 49 a 53 meses. Al momento de dictar sentencia, el juez tomó en consideración el factor que el delito cometido por el acusado, secuestro, había sido realizado mediando "crueldad deliberada". Utilizando este factor, que no había sido ni aceptado por el acusado ni considerado por el jurado, el juez impuso una condena de 90 meses de prisión.

sentencia para aumentar la pena", ha perdido vitalidad a partir de Apprendi, ante, y que la norma federal prevaleciente es que los factores que expongan al acusado a una pena mayor tienen que ser alegados en la acusación y probados por el ministerio público más allá de duda razonable.

III

Examinados los preceptos constitucionales, y las reglas procesales pertinentes, además de la jurisprudencia federal relevante, atendemos el planteamiento constitucional del peticionario Montero Luciano.

En esencia, el acusado plantea que el Artículo 7.04 viola la cláusula de debido proceso de Ley al relevar al ministerio público de alegar la reincidencia en la acusación. Sostiene, que el efecto de dicha disposición es que permite que el ministerio público alegue la reincidencia en un momento posterior a la declaración de culpabilidad del acusado, eliminando el derecho del acusado a ser notificado de la probable pena que habrá de recibir. De este modo, plantea que el acusado que hace alegación de culpabilidad, esperando recibir una pena determinada, queda expuesto a recibir una pena mayor. En consecuencia, la defensa, al no conocer los propósitos del Estado contra el acusado, no podría planificar una estrategia adecuada ni orientar adecuadamente a su cliente.

En virtud de estos planteamientos, precisa que resolvamos si el hecho que la condición de reincidente no tenga que ser alegada en una acusación instada en virtud de la Ley de Vehículos y Tránsito, es inconstitucional por violar la cláusula de debido proceso de ley.

Según señalamos al comienzo, la cláusula de debido proceso de ley, en sus vertientes procesal y sustantiva, requieren que una ley que ha sido impugnada por violar dicha cláusula sea examinada siguiendo el siguiente análisis: bajo la vertiente sustantiva, que el Estado no puede aprobar leyes que afecten de manera arbitraria, irrazonable o caprichosa los intereses de propiedad o libertad del individuo; así la ley será examinada con el propósito de proteger derechos fundamentales de las personas. Por otro lado, bajo la vertiente procesal, la ley será examinada tomando en cuenta que la interferencia del Estado con los intereses de libertad y propiedad se haga mediante un procedimiento justo y equitativo. En dicho análisis lo que hay que determinar es cuál es el debido proceso exigido. Ambos análisis requieren examinar los propósitos del Estado al aprobar la legislación en cuestión.

Un examen de la declaración de propósitos del antes mencionado Artículo 7.01 y de la Exposición de Motivos de la Ley no arroja luz en cuanto al propósito de la Asamblea Ligislativa de eximir al ministerio público del requisito

de alegar la reincidencia en la acusación.[21] Las mismas solo nos exponen, de manera general, el propósito de la Ley de penalizar y de servir de disuasivo a los conductores ebrios. En ausencia de alguna discusión en cuanto a este aspecto, estamos impedidos de determinar cuáles fueron las motivaciones de la legislatura al eximir al ministerio público de este requisito.

Atendido el propósito general de la Legislatura al aprobar la referida Ley, esto es, el de velar por la seguridad pública en las carreteras y lograr el control del conductor ebrio fortaleciendo las sanciones aplicables a ésta, somos del criterio que el mismo no justifica la interferencia con el derecho fundamental de libertad del peticionario Montero Luciano. Esto es, la misma no justifica que a un acusado no se le notifique en la acusación del hecho de que sus convicciones anteriores serán posteriormente alegadas con el propósito de que se le imponga una pena mayor al ser sentenciado.

En el presente caso, el acusado hizo alegación de culpabilidad posiblemente tomando en consideración que el fiscal no alegaba la reincidencia en la denuncia, vislumbrando de este modo que la pena que le sería impuesta era aquella para una primera convicción.[22] Por

---

[21] El historial legislativo de la mencionada Ley tampoco contiene discusión alguna sobre este aspecto.

[22] Específicamente, la pena que a esos efectos impuso el foro primario. Esto es, una multa de $300, el pago de

(Continúa . . .)

consiguiente, en este caso, el acusado no aceptó la reincidencia ni se declaró culpable del delito de conducir en estado de embriaguez con pleno conocimiento de la pena al cual sería expuesto.

Los hechos particulares de este caso reflejan la situación en que el juez utilizó unos factores que no habían sido alegados en la acusación, ni aceptados por el acusado para imponer la sentencia. Esto tiene un efecto signigicativo, particularmente en un caso como éste, en el cual el acusado hizo una alegación de culpabilidad.

La importancia de una alegación de culpabilidad del acusado, la cual implica una renuncia a determinados derechos constitucionales, impone al Estado una obligación de velar porque el acusado tenga conocimiento de todas las consecuencias de dicha alegación. Ciertamente, la exposición a una pena mayor es un factor que el acusado tiene que conocer al momento de hacer dicha alegación.

En vista de lo anterior, somos del criterio que no se cumple con el requisito de adecuada notificación de los cargos presentados en contra del acusado, cuando se permite que el fiscal no alegue la condición de reincidente en la denuncia o acusación y ésta aparezca después, como por arte de magia, al momento de dictar sentencia, como factor para agravar una pena. Lo anterior

---

costas, más un arancel de $50. Ordenó la suspensión de su licencia de conducir por un término de 30 días y a someterse al Programa de Rehabilitación de la Administración de Salud Mental y contra la Adicción.

se agrava, repetimos, cuando como en el presente caso, el acusado ha hecho una alegación de culpabilidad esperando recibir una pena menor a la que realmente recibió.[23]

El Procurador General sostiene que la decisión del Tribunal Supremo federal en Almendarez, ante, controla el presente caso. De la discusión anterior sobre la jurisprudencia federal vimos claramente que el caso de Almendarez, ante, ha perdido su fuerza como precedente y que la doctrina que impera actualmente en la jurisdicción federal es que un juez no puede tomar en consideración, para aumentar la pena a imponerse, hechos que no han sido alegados en la acusación y que por tanto, no han sido ni admitidos por el acusado, ni probados por el fiscal más allá de duda razonable.

Otros fundamentos nos obligan a alejarnos de Almendarez, ante. El más importante: que por virtud de lo dispuesto en la Regla 48 de Procedimiento Criminal, nuestro legislador estableció un deber del ministerio público de alegar la reincidencia en la acusación o denuncia, aun cuando la misma no sea un elemento constitutivo del delito. Con ello, nuestro ordenamiento procesal penal exige que la alegación de reincidencia sea conocida por el acusado.

Dicha disposición reglamentaria, además de imponer la obligación al ministerio público de incluir en la

---

[23] Vale la pena resaltar, que una segunda convicción acarrea una pena de reclusión de entre 15 a 30 días.

acusación los hechos esenciales constitutivos de delito, también le impone la obligación que las convicciones anteriores del acusado sean alegadas en la denuncia o acusación si con ese hecho el ministerio público pretende establecer la condición de reincidente del acusado.[24]

Sabido es que, una vez incorporados ciertos derechos, por acción legislativa, éstos se convierten en parte integral del debido proceso de ley. Véase: Pueblo v. Esquilín Díaz, 148 D.P.R. 808 (1998); Pueblo v. Ortiz Couvertier, 133 D.P.R. 883 (1993); Pueblo v. Prieto Maysonet, 103 D.P.R. 102 (1974). Precisamente, esta es la situación contemplada por la Regla 48 de Procedimiento Criminal. En la medida en que la Regla 48 establece la referida obligación, ésta se convierte propiamente en un derecho del acusado. De este modo, el acusado tiene un derecho de conocer que el fiscal va a establecer su condición de reincidente y que con ello va a solicitar la imposición de una pena mayor. Hay que recordar, además, que el acusado en ese caso tiene la opción de aceptar o negar dicha alegación y que si la niega, el fiscal viene

---

[24] A estos efectos, no nos convencen los argumentos del Procurador General en cuanto a que el acusado conocía sus convicciones anteriores y por ende, su condición de reincidente. El debido proceso de ley que nuestra Constitución le garantiza al acusado le impone deberes al Estado. Por ello, es innegable que éste tiene que incluir todos los elementos que pudieran agravar una pena en el pliego acusatorio. Esto incluye, necesariamente, las convicciones anteriores del acusado. De este modo, el acusado está en posición adecuada para preparar su defensa.

en la obligación de probar las convicciones anteriores como cualquier otro elemento del delito. Los Incisos del Artículo 7.04, aquí en controversia, <u>son claramente contrarios a lo dispuesto en la referida Regla 48</u>.

En el balance entre los intereses gubernamentales y los de la ciudadanía, las garantías procesales del debido proceso de ley deben prevalecer. Los procedimientos que requiere el debido proceso de ley deben incluir una <u>notificación adecuada</u> de todos aquellos elementos que acarreen la imposición de una pena mayor para el acusado. Ello necesariamente tiene que ser así, pues resolver lo contrario resultaría en negarle injustamente al acusado su debido proceso y porque nuestra función como tribunal de última instancia requiere que velemos que en nuestro País exista un sistema de justicia donde se respeten aquellos derechos fundamentales que sirven de apoyo a éste.

Somos del criterio, en consecuencia, que los Incisos (b)4 y (b)(5) del Artículo 7.04 del la Ley de Vehículos y Tránsito de Puerto Rico, <u>en cuanto eximen al fiscal de alegar la reincidencia en la denuncia por guiar en estado de embriaguez</u>, violan la cláusula de debido proceso de ley tanto en su vertiente sustantiva como en la procesal. En conclusión, resolvemos que, al igual que en <u>Figueroa Ferrer</u> v. <u>E.L.A.</u>, 107 D.P.R. 250, 278 (1978), --caso en el que declaramos parcialmente inconstitucional el Artículo 97 del Código Civil de Puerto Rico-- en el presente caso

procede que declaremos inconstitucional, de forma parcial, los referidos Artículos.

En virtud de lo anteriormente resuelto, procede revocar la sentencia del Tribunal de Apelaciones y reinstalar la dictada por el Tribunal de Primera Instancia.

Se dictará Sentencia de conformidad.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


El Pueblo de Puerto Rico

    Recurrido

       vs.                CC-2005-1250     CERTIORARI

Wilfredo Montero Luciano

    Peticionario


SENTENCIA

San Juan, Puerto Rico, a 23 de octubre de 2006


Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia revocando la emitida por el Tribunal de Apelaciones en el presente caso y reinstalando la dictada por el Tribunal de Primera Instancia.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri emitió Opinión concurrente y disidente. "La Juez Asociada señora Rodríguez Rodríguez concurre con el resultado y disiente de la Opinión del Tribunal. Concurre con la determinación de revocar la sentencia del Tribunal de Apelaciones por entender que para que la alegación de culpabilidad del acusado fuera una hecha con pleno conocimiento, conformidad y voluntariedad conforme exige la Regla 72(7) de las Reglas de Procedimiento Criminal, 34 L.P.R.A. Ap. II, éste debió haber sido advertido de que al declararse culpable de violar el Art. 7.02 de la Ley Núm. 22 del 7 de enero de 2002, según enmendada, se exponía a una pena de reincidencia en virtud del Art. 7.04(b)(2) de la propia ley. Habida cuenta que ello no ocurrió su alegación de culpabilidad fue ineficaz." "Disiente de la determinación de inconstitucionalidad del Art. 7.04(b)(4) y (b)(5) de la Ley Núm. 22."


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

        vs.                    CC-2005-1250     Certiorari

Wilfredo Montero Luciano

    Peticionario

Opinión Concurrente y Disidente emitida por el Juez Asociado SEÑOR FUSTER BERLINGERI.

San Juan, Puerto Rico, a 23 de octubre de 2006.

Concurro con la mayoría del Tribunal en que al convicto en el caso de autos no podía imponérsele una pena basada en la reincidencia. No sólo no se alegó la condición de reincidente en la acusación en su contra, como está previsto en la Regla 48 de Procedimiento Criminal, sino que, además, la referida ausencia de tal alegación en la acusación no puso al acusado al momento de considerar si admitía su culpabilidad, en posición de conocer cabalmente todas las intenciones del Estado respecto a su condena. Por ello, fue correcta la pena impuesta por el foro de instancia y erróneo el dictamen del foro apelativo, tal como lo resuelve la mayoría del Tribunal en su opinión.

Sin embargo, para llegar al resultado referido no es necesario el inusitado dictamen de declarar la inconstitucionalidad de unas oraciones de los incisos (b)4 y (b)5 del Art. 7.04 de la Ley de Vehículos y Tránsito de Puerto Rico, como lo hace la mayoría del Tribunal en su opinión.

Nótese que en virtud de lo resuelto medularmente en la opinión del Tribunal en este caso, quedan debidamente fijadas las consecuencias de lo dispuesto en los incisos en cuestión, si el Ministerio Público no incluye la alegación de reincidencia en las denuncias o acusaciones pertinentes. Así los incisos referidos en efecto le permiten al Ministerio Público no hacer la alegación de reincidencia, con las consecuencias correspondientes. En efecto, se le da una **opción** al Ministerio Público sobre el particular. No es necesario declarar la inconstitucionalidad parcial de los incisos en cuestión, pues, porque nada de lo resuelto mediante la opinión mayoritaria indica que el Ministerio Público **está obligado** a incluir la alegación de reincidencia en las acusaciones concernidas. Por ende, los incisos en cuestión quedarían como el fundamento para la opción del Ministerio Público.

Para concluir, debe recordarse la doctrina que rige en nuestra jurisdicción sobre la determinación judicial de inconstitucionalidad. Tales determinaciones no son favorecidas de ordinario, y sólo deben emitirse cuando ello es insoslayable. En otras palabras, los tribunales deben

evitar la determinación de inconstitucionalidad si la disposición en cuestión puede ser interpretada de modo tal que no sea necesario hacer tal determinación. <u>Torres Solano v. P.R.T.C</u>, 127 D.P.R. 497 (1990); <u>Molina v. C.R.U.V.</u>, 114 D.P.R. 295 (1983); <u>Vives Vázquez v. Tribunal Superior</u>, 101 D.P.R. 139 (1973); <u>Pueblo v. Marrero</u>, 79 D.P.R. 649 (1956). En el caso de autos, no es insoslayable la determinación de inconstitucionalidad, por la razón señalada antes. Por ello, disiento de esta parte del dictamen de la mayoría del Tribunal.

JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO